Alan AULSON et ux. Maureen Aulson,
Plaintiffs, Appellants,

v.

Charles BLANCHARD, et al.,
Defendants, Appellees.

No. 95–2233.

United States Court of Appeals,
First Circuit.

Heard March 5, 1996.

Decided April 25, 1996.

Before SELYA, STAHL and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

This appeal demands that we mull the prerequisites for liability under the Ku Klux Klan Act, 42 U.S.C. § 1985(3) (1994). We hold that (1) the class-based animus required to ground a private right of action under the statute applies to conspiracies allegedly involving public officials in the same way as it applies to all other conspiracies; and (2) the requirement is not satisfied where, as here, no sufficiently defined class appears. Accordingly, we affirm the district court's dismissal of the action.

## I. BACKGROUND

Whether or not it is true that all politics is local, this case bears witness that local politics, no less than national politics, can become meanspirited. From 1984 to 1990, plaintiff-appellant Alan Aulson served as a selectman in Georgetown, Massachusetts. In his complaint, he alleges that the defendants (a cadre of elected and appointed municipal officeholders) are members of an incumbent group of "old guard politicians" who more or less run things in the town. In contrast, he is a "member[ ] of a political group which supports candidates who oppose the politics of the 'old guard.'" The complaint charges that Aulson paid a stiff price for his opposition: the members of the old guard collogued against him and wreaked their vengeance by such nefarious means as conducting illegal searches pursuant to sham prosecutions. This course of conduct, he asserts, gives rise to a cause of action under 42 U.S.C. § 1985(3).

Aulson originally brought his suit in a state venue.[1] Remarking the federal question, the defendants removed it to the district court and then sought dismissal under Fed. R.Civ.P. 12(b)(6). Despite the plaintiff's objection, the district court granted the motion to dismiss. This appeal ensued.

Gary S. Sackrider, Salem, MA, for appellants.

Joyce Frank, with whom Michele E. Randazzo and Kopelman and Paige, P.C., Boston, MA, were on brief, for appellees.

1. Technically there are two plaintiffs (Aulson and his wife). Since Mrs. Aulson's presence does not affect the legal issues before us, we omit further reference to her.

## II. ANALYSIS

■ Inasmuch as the trial judge dismissed the complaint for failure to state an actionable claim, we review his decision de novo, accepting as true all well-pleaded factual averments and indulging all reasonable inferences in the plaintiff's favor. *See Leatherman v. Tarrant County N.I. & C. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). We hasten to add, however, that this deferential standard does not force an appellate court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited. *See Correa–Martinez,* 903 F.2d at 52; *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir.1989). It is only when the facts alleged, if proven, will not justify recovery that an order of dismissal under Rule 12(b)(6) may stand. *See Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### A

■ Section 1985(3) proscribes certain enumerated conspiracies.[2] To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). In *Griffin,* the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities under the laws" to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or

perhaps otherwise class-based, invidiously discriminatory animus." *Id.*

### B

This added requirement looms as an insurmountable obstacle to the plaintiff's attempted embrace of § 1985(3). He seeks to ameliorate this difficulty in two different ways: he strives first to detour around the obstacle, and, failing, he then tries to climb over it.

■ **1. *Public/Private Conspiracies.*** The plaintiff's effort to bypass the point entirely centers around his insistence that the requirement of a class-based discriminatory animus applies only to wholly private conspiracies (that is, conspiracies that do not involve public officials acting as such), and that he need neither allege nor prove a class-based animus in this action (which is directed at a conspiracy that allegedly involves public officials doing the public's business).

This gambit has been tried in several other circuits and has uniformly been found wanting. *See Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995); *Haverstick Enterps., Inc. v. Financial Fed. Credit, Inc.,* 32 F.3d 989, 994 (6th Cir.1994); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994); *Burrell v. Board of Trustees of Ga. Military Coll.,* 970 F.2d 785, 794 (11th Cir.1992), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993); *Munson v. Friske,* 754 F.2d 683, 694–95 & n. 8 (7th Cir.1985). Although this court has never squarely repudiated the gambit, we have on at least two occasions required (albeit without substantive comment) that a class-based animus be shown notwithstanding that public officials were alleged to be active participants in the particular conspiracies there at issue. *See Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 34 (1st Cir. 1996); *Daley v. Town of New Durham,* 733 F.2d 4, 7 (1st Cir.1984). Thus, following the path down which the plaintiff beckons not only would set us apart from our sister cir-

**2.** The statute confers a private right of action for injuries occasioned when "two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class

of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3).

cuits but also would undermine our own precedents.

In all events, an unforced reading of § 1985(3) affords no principled basis for distinguishing between public and private conspiracies. *Griffin* neither supports nor suggests the existence of such a distinction, and, at any rate, it is not the proper province of a federal court to rewrite a statute under the guise of interpretation. Thus, we decline the plaintiff's invitation to create by judicial fiat two classes of § 1985(3) conspiracies along a public/private axis.

So ends this phase of our inquiry. To the extent that we have not previously made the scope of the requirement explicit, we now hold that to state a claim under § 1985(3) in respect to conspiracies involving public officials, private actors, or both, plaintiffs must allege that the conduct complained of resulted from an invidiously discriminatory class-based animus.

**2. *Cognizable Classes.*** The plaintiff next struggles to surmount the obstacle instead of skirting it. He contends that he is a member of a class protected by § 1985(3), and that he has alleged as much. His contention does not withstand the mildest scrutiny.

The complaint is a lengthy, somewhat prolix narrative. In regard to the class-based animus requirement, however, it states nothing more than that Alan Aulson and a named confederate (not a party to the suit) are "representative members" of a "class" that is composed solely of persons who support candidates opposed to the politics of the "old guard," and that the defendants are members of the "old guard." On this skimpy predicate, the plaintiff posits that the *ad hoc* "opposition group" is a class, and that the defendants' supposed animus against it is class-based within the meaning ascribed to that adjectival term by the *Griffin* Court. We do not agree.

■ We have previously interpreted the *Griffin* gloss to denote that plaintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious. *See Hahn v.*

*Sargent,* 523 F.2d 461, 469 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Harrison v. Brooks,* 519 F.2d 1358, 1360 (1st Cir.1975); *cf. Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993) (holding that women seeking abortions are not a class within the confines of § 1985(3)); *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 3360–61, 77 L.Ed.2d 1049 (1983) (holding that a group defined by economic criteria does not constitute a class for purposes of § 1985(3)). The Supreme Court has not decided whether political differences are invidious criteria that qualify the classes that they define for the protection of § 1985(3). *See Scott,* 463 U.S. at 837, 103 S.Ct. at 3360–61 (reserving the question of whether § 1985(3) covers more than racially directed conspiracies); *Griffin,* 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9 (same).

Although other federal courts have divided on this question, *see infra,* we have not yet had occasion to lend our institutional voice to the rising cacophony that surrounds it. Nor need we do so today. Whether or not political classes are covered by § 1985(3), the particular class that Aulson proposes does not constitute a cognizable class at all.

■ The notion of a cognizable class includes two separate and distinct components. The first component focuses on the substantive characteristic defining the class, e.g., race or gender or political affiliation. While it is universally acknowledged that racial classes are within the ambit of § 1985(3), *see, e.g., Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798, no such consensus exists anent political classes. Some courts have concluded that political classes are within the protective pale of § 1985(3) because reference to political characteristics comprises an invidious method for subjecting persons to differential treatment. *See, e.g., Conklin v. Lovely,* 834 F.2d 543, 549 (6th Cir.1987) (holding that § 1985(3) may shield a political class); *Keating v. Carey,* 706 F.2d 377, 387–88 (2d Cir. 1983) (same); *Perez v. Cucci,* 725 F.Supp. 209, 252 (D.N.J.1989) (same), *aff'd,* 898 F.2d 139 (3d Cir.1990) (table). Other courts have reached the opposite conclusion. *See, e.g.,*

*Grimes v. Smith,* 776 F.2d 1359, 1366, 1367 (7th Cir.1985) (holding that political classes are not so protected); *Harrison v. KVAT Food Mgmt., Inc.,* 766 F.2d 155, 163 (4th Cir.1985) (same); *Morales–Narváez v. Rossello,* 852 F.Supp. 104, 115 (D.P.R.1994) (same), *aff'd on other grounds,* 65 F.3d 160 (1st Cir.1995) (table).

The second component, by contrast, focuses not on the particular defining characteristic of the putative class, but on whether there is any identifiable class at all. We emphasize that this inquiry is distinct from the question of whether a group denominated by a particular characteristic is sheltered from discrimination by § 1985(3). No matter what the alleged basis for discrimination, the allegation of a "class-based animus" naturally presumes that there is a specific, identifiable class against whom the defendants can have discriminated. Accepting for the sake of argument that political classes enjoy the prophylaxis of § 1985(3), the present plaintiffs nevertheless stumble over this second prong.

▮ Though there is no comprehensive set of rules for determining when individuals constitute a class for purposes of § 1985(3), there are certain inescapable minimum requirements. For instance, it is clear that at the very least a class must be more than just a group of persons who bear the brunt of the same allegedly tortious behavior. If a class could be defined from nothing more than a shared characteristic that happened to form the basis of the defendants' actions, the requirement of class-based animus would be drained of all meaningful content. Justice Scalia put the proposition in these terms:

> Whatever may be the precise meaning of a "class" for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with.

*Bray,* 506 U.S. at 269, 113 S.Ct. at 759.

Our own case law confirms that a class cannot be defined solely on the basis of harm inflicted. In *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), we considered a § 1985(3) claim brought by a developer, alleging that a municipal planning board discriminated against a class of future homeowners in the course of rejecting a proposed subdivision. We held that even if the developer could sue on behalf of this class, no § 1985(3) claim would lie because the class was no more than "an undefined group of people with unknown income, racial, political and social characteristics." *Id.* at 834. The only thing that the members of this group had in common was that they stood to be disadvantaged by the defendants' actions. Consequently, the complaint "failed to identify any definite class which would satisfy section 1985(3)'s requirement." *Id.*

The principle that emerges from these cases is that a class, to be cognizable, must be identifiable by reference to "something more than ... [the members'] desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray,* 506 U.S. at 269, 113 S.Ct. at 759. In other words, the line drawn by the substantive characteristic must divide individuals into distinct, separate, and identifiable groups. This means, for example, "white" as opposed to "non-white," *see, e.g., Stevens v. Tillman,* 568 F.Supp. 289, 293 (N.D.Ill.1983) (holding that whites constitute a protected class under § 1985(3)), "female" as opposed to "male," *see, e.g., Libertad v. Welch,* 53 F.3d 428, 449 (1st Cir.1995) (holding that women constitute a protected class under § 1985(3)), or, if political classes are includable—a matter on which we do not opine—"registered Republicans" as opposed to other voters, *see, e.g., Keating,* 706 F.2d at 379 (holding that Republicans constitute a protected class under § 1985(3)).

▮ We hold, therefore, that a class is cognizable for purposes of § 1985(3)'s class-based animus requirement only when it is comprised of a distinctive and identifiable group. For this purpose, distinctiveness connotes that a reasonable person can readily determine by means of an objective crite-

rion or set of criteria who is a member of the group and who is not. *See Rodgers v. Tolson*, 582 F.2d 315, 318 (4th Cir.1978) (rejecting alleged class partly because it was "impossible to determine who besides the [plaintiffs] belong to this class" and because the plaintiffs had failed to identify "a larger group that could be objectively identified by an observer"); *Bricker v. Crane*, 468 F.2d 1228, 1233 (1st Cir.1972) (noting that a class must be "readily recognizable" in order to come within the scope of § 1985(3)), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973).

Measured against this benchmark, the group described by the plaintiff falls short of qualifying as a cognizable class for purposes of § 1985(3)'s class-based animus requirement. The plaintiff defines the group only as persons who support other persons "opposed to the politics of the old guard," and offers himself and one other former selectmen as "representative members." As far as anybody can tell, aside from these two "members" this group is wholly indeterminate. It might include all the voters in Georgetown, or it might include only voters who have spoken out against incumbent selectmen, or it might include only the two individuals featured in the complaint, or it might include anyone whose inclusion would benefit the plaintiff at any given time. There is simply no way to characterize this group as an identifiable segment of the community by reference to any objective criteria, and, hence, it cannot serve as a cognizable class within the purview of § 1985(3). *See Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) (rejecting class status under § 1985(3) when the plaintiff alleged only that he was "a political opponent of the defendants and was extremely vocal in his opposition to their management of the [municipality]"); *Rodgers*, 582 F.2d at 317 (holding that a complaint which alleged discrimination against a class of persons "in political and philosophical opposition to" municipal commissioners did not describe a "cognizable class" and therefore failed to state a cause of action under § 1985(3)).[3]

The lack of distinctiveness is especially striking in this case because the proposed class is defined primarily in the negative; that is, the plaintiff describes the class principally with reference to what it opposes—the old guard—rather than with reference to what it espouses. The ambiguities inherent in this negative definition compound the problem of identifying the members of the class since there is no way for an objective observer to identify the members of the *other* class. They could be a few of the incumbents, most of the incumbents, all the incumbents, or some larger aggregation that includes incumbents and their adherents. To put it bluntly, membership in both the plaintiff's proposed class and the antagonist class (the old guard) is, like beauty, almost exclusively in the eye of the beholder. This is not the stuff of cognizability.

To sum up, the lone criterion that the plaintiff offers to define the suggested class is opposition to the "politics of the old guard." This description will not do because it draws no readily identifiable line. Objectively speaking, a third party at most can observe that the putative class is comprised of some (unknown) persons who support some (unknown) political aspirants who object to some (unknown) aspect of some (unknown) political views or practices of some other (unknown) persons who have enjoyed some (unknown) degree of political success in Georgetown for some (unknown) period of time.

We have said enough on this score. By not alleging discrimination against a distinctive, readily identifiable class of persons, the plaintiff has failed to state an actionable claim under § 1985(3). *See Gleason*, 869 F.2d at 695; *Rodgers*, 582 F.2d at 317; *see also Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176 (10th Cir.1983) (affirming dismissal for failure to state a claim when complaint did not "contain a description of a class of persons or group that is sufficiently definite or precise to set against the 'class of persons' terminology in § 1985(3)"), *cert. de-*

---

**3.** Concededly, the definition of *any* political class may face serious problems in this regard. *But cf. Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir.1973) (holding that "clearly defined" political classes are covered by § 1985(3)). We leave those headaches for another day.

*nied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984). Consequently, the lower court did not err in dismissing the action.

## C

We must attend to a last detail. At one point, the plaintiff asked the district court for leave to amend the complaint by naming one or two additional defendants. The court denied the motion without prejudice to renewal if the case survived a dispositive motion on behalf of the existing defendants. The district court subsequently granted the defendants' motion to dismiss without granting leave to amend. On appeal, the plaintiff makes an oblique reference in the reply brief that suggests he should have been given an opportunity to replead.

We rebuff this suggestion for three reasons. First, relief from an appellate court, requested for the first time in a reply brief, is ordinarily denied as a matter of course, *see Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 87 (1st Cir.1990), and this case fits comfortably within the general rule. Second, to the extent the request for leave to amend is before this court at all, the plaintiff has advanced absolutely no developed argumentation in support of it, and so we deem it to have been abandoned. *See Ryan v. Royal Ins. Co.,* 916 F.2d 731, 734 (1st Cir.1990); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). Third, the only amendment that the plaintiff sought below involved adding defendants—a step that would have done nothing in terms of better defining a class for purposes of § 1985(3). Thus, the proposed amendment would have been futile and the district court therefore did not err in neglecting to authorize an amended complaint. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Correa–Martinez,* 903 F.2d at 59. Relatedly, if what the plaintiff now has in mind is something other than adding defendants, he has not so stated, and, in all events, we find nothing in the record which indicates that he could possibly delineate a cognizable class and thereby state an actionable claim under § 1985(3). Mindful of these circumstances, we will not permit the plaintiff to string this litigation out further by attempting to replead in hopes that he can resuscitate a case that, by all appearances, is terminal. *See Correa–Martinez,* 903 F.2d at 59 (counselling against "needlessly prolong[ing] matters" when "an amendment would be futile or would serve no legitimate purpose"); *Dartmouth Review,* 889 F.2d at 23 (similar).

## III. CONCLUSION

We need go no further. Because the district court appropriately granted the defendants' motion to dismiss without simultaneously granting leave to amend, the judgment below must be

*Affirmed.*