**Robert F. COLUMBUS and Margaret Columbus, Plaintiffs,**

**v.**

**John W. BIGGIO, Jeffrey Nutting, William Solomon, and the Town of Stoneham, Defendants.**

**C.A. No. 98–11111–JLT.**

United States District Court, D. Massachusetts.

Nov. 4, 1999.

Salvatore J. Frontiero, Frontiero & Graves, Stoneham, MA, for plaintiffs.

Stephen Adams, Taylor, Duane, Barton & Gilman, Boston, MA, James J. Duane, III, Taylor, Duane, Barton & Gilman, LLP, Boston, MA, for defendants.

*MEMORANDUM*

TAURO, District Judge.

## I. BACKGROUND

This case comes before the court on a motion to dismiss and a motion to strike prejudicial material, in an action based on federal and state civil rights claims.

Plaintiff Robert F. Columbus is the Building Inspector for the Town of Stoneham. His wife, Margaret Columbus, is also a municipal employee working in the Treasurer's Office.

Defendant John Biggio is a member of the Stoneham Board of Selectmen. Defendant Jeffrey Nutting is the Town Administrator for the Town of Stoneham. Defendant William Solomon is the Town Counsel for the Town of Stoneham. The final Defendant is the Town of Stoneham.

Plaintiff alleges the following:

From November of 1996 through October of 1997, Defendants Nutting, Biggio and Solomon engaged in a campaign of harassment and threats against the Plaintiffs aimed, ultimately, at the Donovan family. Defendant Biggio allegedly wanted to purchase the Donovan's residence to gain access to land he owned and hoped to develop. When the Donovans refused to sell, he engaged Nutting and Solomon to help him pressure Mr. Columbus to cite the Donovans for frivolous and pretextual violations of the Building Code. Defendants allegedly employed various techniques against Plaintiffs: threatening to fire Mr. Columbus; reclassifying Mrs. Columbus's job to a lower pay level; imposing onerous conditions on Mr. Columbus's employment; attempting to force Mr. Columbus to retire; killing two horses owned by the Donovans; and finally, suspending Mr. Columbus without pay for filing a complaint with the Massachusetts Commission Against Discrimination and for not cooperating in the campaign against the Donovans.

Defendants filed a Notice of Removal on June 8, 1998. On January 25, 1999, Defendants filed the pending motions to dismiss, with Plaintiffs responding on March 19, 1999. On June 29, 1999, the court ordered the parties to brief issues not fully addressed in the motions and opposition. The supplemental briefing was all received by July 20. On August 2, 1999, Plaintiffs filed a motion to strike as prejudicial factual assertions contained in Defendants' supplemental brief.

## II. Analysis:

### A. Motions to Dismiss

Defendants move to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim under Fed.R.Civ.Pro. 12(b)(6). For the reasons discussed below, the motions to dismiss are granted in part, and denied in part.

1. The Columbus' § 1985(3) Claims Must Be Dismissed Because Plaintiffs Are Not Members Of A Protected Class

 a. Mr. Columbus

Mr. Columbus brings Count I against all Defendants under the Ku Klux Klan Act, which prohibits conspiracies "for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Columbus alleges that Defendants violated § 1985(3) by, among other things, conspiring to suspend him without pay.

A § 1985(3) plaintiff must allege: (1) a conspiracy; (2) a conspiratorial purpose to deprive a person or class of persons of equal protection or of equal privileges and immunities; (3) an overt act in furtherance of the conspiracy; and (4) either injury to person or property or deprivation of a constitutionally protected right or privilege. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Additionally, "there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *Griffin* requires plaintiffs to "allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious." *Aulson,* 83 F.3d at 4.

Mr. Columbus alleges that Defendants targeted him because he is a member of the Columbus family. This raises a new issue in this Circuit: whether members of a family are a protected class under § 1985(3). Courts have struggled with trying to determine what classes are

protected, though the trend has been toward expanding protection. The Supreme Court, after reviewing the statute's Reconstruction history, said that it was "a close question as to whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably [Reconstruction-era] Republicans." *United Brotherhood of Carpenters And Joiners of America, Local 610, AFL—CIO v. Scott,* 463 U.S. 825, 836, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). "The predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters." *Id.* The Court has hinted, however, that other classes may be protected, and the lower federal courts have recognized additional classes, most notably women. *See Libertad v. Welch,* 53 F.3d 428, 449 (1st Cir.1995) (holding that women are a protected class and citing several other circuits that have reached the same conclusion). Courts have not, however, stated any definitive criteria for determining what classes are protected.

■■■■ In *Aulson,* the First Circuit said that the "notion of a cognizable class includes two separate and distinct components. The first component focuses on the substantive characteristic defining the class, e.g., race or gender or political affiliation. . . . The second component, by contrast, focuses not on the particular defining characteristic of the putative class, but on whether there is any identifiable class at all." 83 F.3d at 5. Mr. Columbus argues that his family constitutes a "distinctive and identifiable group" because "a reasonable person can readily determine by means of an objective criterion . . . who is a member of the group and who is not." *Id.* In the case of the Columbus family, outsiders can identify the class by the surname. Although Columbus is right that his family is identifiable, "this inquiry is distinct from the question of whether a group denominated by a particular characteristic is sheltered from discrimination by § 1985(3)." *Id.* Again, the First Circuit

has not set out clear guidelines for determining what classes are protected. "[I]t is clear that at the very least a class must be more than just a group of persons who bear the brunt of the same allegedly tortious behavior." *Id.* The Columbus family passes this test. Mr. Columbus alleges that Defendants discriminated against members of his family simply because they are in the family, not because they merely "share a desire to engage in conduct that [Defendants] disfavor[ ]." *Id.*

Judge Young read the First Circuit's holding in *Libertad* to limit protected classes to those groups "subject to heightened scrutiny under the Equal Protection Clause." *Piacentini v. Levangie,* 998 F.Supp. 86, 91 (D.Mass.1998). The plaintiff in *Piacentini* claimed that the defendants discriminated against him because he was a parolee. Judge Young ruled that, because "[p]arol status is not a suspect or quasi-suspect classification under the Equal Protection Clause . . . any animus the Defendants may have had towards Piacentini as a parolee is insufficient to satisfy the animus requirement of section 1985(3)." *Id.* In *Libertad,* the First Circuit stated that "at the very least, the classes protected by § 1985(3) must encompass those classifications that merit heightened scrutiny under Equal Protection analysis . . . ." 53 F.3d at 448. *Libertad* extends § 1985(3)'s reach to cover all suspect and quasi-suspect classes, but did not address whether other groups may also be within its grasp.

The Columbus family is thus in a twilight zone of First Circuit jurisprudence. It meets the minimal requirements of identifiability, but does not reach the *Libertad* threshold. There is little guidance as to what classes in this gray area are protected. A Middle District of Pennsylvania court, addressing the question of whether "a large family in a small town constitutes a [protected] class," simply stated that the argument was "frivolous." *Estate of Cooper v. Leamer,* 705 F.Supp. 1081, 1088 (M.D.Pa.1989).

This court sees no reason to extend protection beyond those groups which have been the historical victims of bias and discrimination, such as blacks, women, and ethnic or religious groups. As there is no history of discrimination against families, extending the statute to cover the Columbuses would, in effect, hold that any aggregation of two or more people is protected. Family feuds could become matters of constitutional import. This court is unwilling to take that step and holds, therefore, that Plaintiffs, as a family unit, are not members of a protected class under § 1983(3).

For these reasons, Count I is DISMISSED.

### b. Mrs. Columbus

In Count XIII, Mrs. Columbus also brings a § 1985(3) cause of action against Nutting. Her claim fails for the same reason as Mr. Columbus.'

Count XIII is therefore also DISMISSED.

### 2. The Columbus' Equal Protection Claims Under § 1983 Survive Because Defendants Were Motivated by Bad Faith or Intent to Injure

#### a. Mr. Columbus

In Count II, Mr. Columbus brings claims against all Defendants under § 1983 for violations of Equal Protection. In particular, he claims that Nutting imposed "unfair terms and conditions" on his job and eventually suspended him.

■ Defendants argue that this count should be dismissed because Plaintiffs fail to identify similarly situated employees who were treated differently. " 'A violation of Equal Protection occurs when the government treats someone differently than another who is similarly situated.' " *Koelsch v. Town of Amesbury*, 851 F.Supp. 497, 501 (D.Mass.1994). A plaintiff bringing an Equal Protection claim must allege that "specific [similarly situated] town employees were treated differently." *Id.* Mr. Columbus meets this requirement by alleging that the terms Nutting imposed on

him "were not imposed ... upon other similarly situated employees of the Town of Stoneham, such as the Health Inspector, the Department of Public Works Director and other Town of Stoneham department heads." Defendants cite no cases requiring Plaintiffs to refer to the other similarly situated employees by name, and the complaint sufficiently puts Defendants on notice.

The Equal Protection count is weakened, however, by questions of motive. Mr. Columbus alleges that Defendants were motivated by his filing of MCAD proceedings, his refusal to help torment the Donovans, and his familial relationship to Stephen Columbus. None of these motivations, on their face, violate Equal Protection.

■ An Equal Protection plaintiff must allege not only that he was treated differently than others similarly situated, but also that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909–10 (1st Cir.1995). Mr. Columbus, therefore, must allege that Defendants treated him differently because of either his membership in a suspect class, his exercise of a "fundamental right," or because they were motived by "bad faith or malicious intent to injure." *Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen of Town of Randolph*, 932 F.2d 89, 94 (1st Cir.1991).

■ As the Columbus family is not a suspect class, Mr. Columbus's allegation that Defendants discriminated against him because of his membership in the family cannot state an Equal Protection claim. His allegations that Defendants retaliated against him because he refused to persecute the Donovans, or because he filed an MCAD complaint, are also unavailing because "a pure or generic retaliation claim does not implicate the Equal Protection

Clause." *Rodriguez–Melendez v. Rivera*, No. 98–cv–1250–SEC, 1998 WL 151870, at *3 (D.P.R. Mar. 23, 1998). Mr. Columbus could state an Equal Protection claim by alleging that Defendants "retaliatory actions were motivated by ... protected speech." *Rubinovitz*, 60 F.3d at 911. For example, the plaintiffs in *Rubinovitz*, who alleged violations of free speech in their complaint, could have survived summary judgment by offering evidence showing that the defendants punished them for exercising their First Amendment rights. *Id.* at 909, 911. Mr. Columbus, on the other hand, has alleged retaliation, but has not alleged that the retaliation was in response to speech protected by the First Amendment. Indeed, his complaint does not mention the First Amendment or the right of free speech. Mr. Columbus's retaliation claim does not implicate a fundamental right because "nowhere in his complaint does [he] allege that defendants' conduct violated his right to free speech." *Rodriguez–Melendez*, 1998 WL 151870, at *3 (holding that plaintiff's retaliation claim did not state an Equal Protection claim).

▉ Plaintiffs' Equal Protection claim is saved, however, by evidence that his selective treatment was motivated by "bad faith or malicious intent to injure." *Yerardi's*, 932 F.2d at 94. The complaint does not specifically allege this, nor did either parties adequately argue this point in their motions. In fact, it was on this issue (and the question of Mr. Columbus's Due Process property interest in his job) that the court ordered the parties to submit supplemental briefing. Defendants' additional briefings stated only that Plaintiffs' allegations were too vague to constitute "impermissible considerations" under *Rubinovitz*. Plaintiffs, making more of an effort to comply with the court's order, argue that from Defendants' conduct one can infer "bad faith" and "malicious intent to injure," thus satisfying the second prong of *Rubinovitz*. *See Yerardi's*, 932 F.2d at 94.

While the complaint does not style the equal protection claims as arising from bad faith or malicious intent to injure, Plaintiffs do state facts sufficient to support such a basis: Mr. Columbus was regularly pressured to misuse his authority as building inspector; he was threatened with continuing harassment; Nutting changed the conditions of employment to pressure retirement; and finally, Mr. Columbus was suspended without pay. The actions taken by Nutting against Mr. Columbus, as detailed in the complaint, "give enough indication of a malicious orchestrated campaign ... that the case cannot be resolved" by a motion to dismiss. *Rubinovitz*, 60 F.3d at 912.

▉ The final question is whether Mr. Columbus's allegations against each Defendant were sufficient to support a viable claim. Although pleading standards are minimal, the First Circuit requires "more than conclusions or subjective characterizations." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). A complaint must include "at least the allegation of a minimal factual setting. It is not enough to allege a general scenario...." *Id.* Mr. Columbus's allegations against Defendant Biggio do not meet this threshold. Although Mr. Columbus alleges that Biggio conspired against him in combination with Defendants Nutting and Solomon, he makes no allegations regarding Biggio's role in Plaintiff's adverse treatment. He simply has not said what part Biggio had in suspending him or in the imposition of onerous work conditions. These allegations fail the "minimal" requirement of "set[ting] forth facts ... as to who did what to whom and why." *Id.* Mr. Columbus's Equal Protection claim against Biggio is therefore dismissed.

▉ The same holds true for Defendant Solomon. Although Mr. Columbus alleges that both Nutting and Solomon told him that he was suspended, he does not allege that Solomon had any power or authority to suspend him. In fact, the Second Amended Complaint states that

"Nutting is the Town of Stoneham policy maker responsible for imposing conditions on Mr. Columbus's employment and for Mr. Columbus's firing and/or suspension." As the allegations in the Complaint place responsibility for Columbus's treatment in Nutting's hands, the Equal Protection claim against Solomon is also dismissed.

As to the Equal Protection claim in Count II of the Amended Complaint, the Motion to Dismiss is DENIED for Defendant Nutting, but GRANTED for Defendants Biggio and Solomon.

#### b. Mrs. Columbus

 Count XII brings a § 1983 claim for violation of Equal Protection on Mrs. Columbus's behalf. She alleges that Nutting reclassified her job to a lower position, costing her wages and benefits, and abused his power by passing her over for promotions, all without treating similarly situated employees in the same fashion.

Mrs. Columbus meets the first requirement of selective treatment by asserting that she was treated differently from other similarly situated employees. She alleges that the only other similarly situated employee whose job was reclassified was her sister, and that no other similarly situated employees were unfairly passed over for promotions. Mrs. Columbus meets the second requirement of improper motivation by sufficiently alleging facts supporting the same bad faith or malicious intent to injure in Nutting's treatment of her. This is evidenced by the pattern of conduct against her, as well as the threat against her husband, delivered in her presence, to make their lives "crazy."

As to the Equal Protection claim in Count XII, Defendant Nutting's Motion to Dismiss is therefore DENIED.

3. Mr. Columbus's Section 1983 Due Process Claim Should Survive, While Mrs. Columbus's Fails for Lack of A Protected Property Interest.

#### a. Mr. Columbus

 In Count II, Mr. Columbus alleges a Due Process violation, through his suspension without pay, as a second basis for his § 1983 claim. Defendants argue that Mr. Columbus's suspension does not implicate any liberty or property interest protected by the Due Process Clause. In support of this, Defendants cite cases holding that the transfer or reassignment of an employee does not implicate a protected property interest. Mr. Columbus, however, was suspended without pay, and Defendants cite no cases and offer no analysis suggesting that an employee can be denied pay without implicating Due Process.

Whether Mr. Columbus had a protected property interest in his job was the second issue on which the court ordered the parties to submit supplemental briefing. Both parties cite *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), for the proposition that a public employee's interest in his job is defined by the terms of his or her appointment. Defendants submission stops there to argue that adequate due process was provided to Mr. Columbus (leading Plaintiffs to file the pending motion to strike). Plaintiff, however, argues that Mass.Gen.Laws ch. 143 § 3Y creates a protectable property interest by making Mr. Columbus's position a three year appointment that prohibits removal except for cause, and then only after a hearing by the appointing authority. Defendants cite no authority to refute this argument. Plaintiff's allegations are thus sufficient to support a § 1983 Due Process claim under the *Roth* standard.

 The remaining issue is whether Plaintiff has alleged sufficient facts to support this claim against all Defendants. As with the Equal Protection claim, Mr. Columbus's allegations focus almost exclusively on the conduct of Nutting. It was Nutting who possessed and exercised the power to suspend Mr. Columbus. Plaintiff's allegations regarding Defendants Biggio and Solomon are couched in the

vague language of conspiracy. The most that Mr. Columbus has alleged is that Solomon was present when notice of the suspension was delivered. This is not enough to state a cause of action against either Solomon or Biggio.

The Motion to Dismiss Mr. Columbus's § 1983 Due Process claim in Count II is therefore GRANTED with regard to Biggio and Solomon, but DENIED with regard to Nutting.

### b. Mrs. Columbus

█ In Count XII Mrs. Columbus asserts that the actions taken against her by Nutting (demotion and passing her over for promotion) were in violation of her Due Process rights. Plaintiffs, however, make no claim that Mrs. Columbus has a protected property interest in her job under the *Roth* standard. *Id.* 408 U.S. at 507, 92 S.Ct. 2531. Lacking any facts to support a protected property right, Count XII is DISMISSED as it pertains to any Due Process Claim.

### 4. Massachusetts Civil Rights Act Claims

#### a. Mr. Columbus

█ In Count III, Mr. Columbus alleges that Defendants violated his constitutionally protected rights in violation of Mass.Gen.Laws ch. 12, §§ 12, 11H, I, the Massachusetts Civil Rights Act (the Act). "To establish a claim under the Act, a plaintiff must prove that (1) his exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference ... was by threats, intimidation or coercion." *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548, 564, 646 N.E.2d 139 (1995), *cert. denied*, 516 U.S. 931, 116 S.Ct. 337, 133 L.Ed.2d 235 (1995) (citation and internal quotation marks omitted). Mr. Columbus's claims fail because he has not alleged that any of the Defendants deprived him of his rights by threats, intimidation or coercion.

Mr. Columbus alleges that Defendants deprived him of Due Process and Equal Protection when they suspended him. As stated earlier, he has only properly pled a Due Process and Equal Protection claim against Defendant Nutting. His claims under the Massachusetts Civil Rights Act against Biggio and Solomon, therefore, must fail because he has not alleged that those Defendants deprived him of any rights.

Even if Mr. Columbus had alleged deprivations of Due Process and Equal Protection by all Defendants, his claim under the Act fails because he has not alleged that those deprivations were accomplished by threats, intimidation or coercion. At most, he has alleged deprivations and threats, not deprivations by threats.

With regard to Biggio, Mr. Columbus has not even alleged a threat. He argues that Biggio threatened him by "facilitating" the killing of the Donovan's horses. Arguably, this might be a threat against the Donovans, but not against Mr. Columbus.

█ Mr. Columbus does allege that Nutting and Solomon threatened him repeatedly. He does not, however, establish the nexus between threats and deprivations of rights required by the Act. For example, Columbus alleges that Nutting and Solomon threatened to fire him and humiliate his family if he did not do their bidding. He does not, however, allege that these threats or any others deprived him of Due Process or Equal Protection. The alleged Due Process deprivation was a direct deprivation—Nutting suspended him. The same act formed the basis for the Equal Protection claim because no other similarly situated employees were treated in this way. "[A] direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do." *Swanset Devel-*

*opment Corp. v. City Of Taunton,* 423 Mass. 390, 396, 668 N.E.2d 333 (1996). The threats were all designed to pressure Mr. Columbus into joining the witch hunt against the Donovans. They were not aimed at depriving him of his property rights or Equal Protection. Therefore, Mr. Columbus fails to state a claim under the Act.

Mr. Columbus's claims under the Massachusetts Civil Rights Act, found in Count III of the Amended Complaint, therefore are DISMISSED in their entirety.

#### b. Mrs. Columbus

In Count XIV, Mrs. Columbus brings claims under the Act against Nutting and the Town. She alleges that Nutting attempted to coerce her into quitting her job by degrading her municipal ranking. This allegedly resulted in a deprivation of Due Process and Equal Protection. As discussed above, to succeed in claim under the Act, Mrs. Columbus must show interference with a right protected by the U.S. Constitution or the constitution or law of the Commonwealth by threats, intimidation, or coercion.

██ Any Equal Protection claim is flawed for the same reasons as Mr. Columbus's claims under the Act. At best, Mrs. Columbus has alleged threats by Nutting (he would drive the Columbus family "crazy") and an interference with her Equal Protection rights. This interference, however, was not caused by the threats, coercion, or intimidation; it was a simple act of retaliation against the Columbuses.

██ Mrs. Columbus's Due Process claim under the Act presents a stronger causal connection between threats, coercion or intimidation and the deprivation of her protected rights. Assuming that she has a protected right in her employment, the downgrading of her municipal rank is evidence of a coercive attempt to get her to quit her job. The problem with using Due Process deprivation as the basis for her state civil rights claim is that Mrs. Columbus has not alleged that she has a protected property interest in her position. The Massachusetts Civil Rights Act has been interpreted as providing a remedy coextensive with § 1983, extending its coverage beyond the federal remedy only to cover acts by private parties. *Sena v. Commonwealth,* 417 Mass. 250, 262, 629 N.E.2d 986 (1994). As an at will employee (and we have no evidence that she was anything more), Mrs. Columbus has no protected property right. *See e.g. Irvin v. McGee,* No. 78866, 1993 WL 818806, (Sup. Ct. of Mass., Sept. 27, 1993) (at will employee does not have claim to continued employment). Just as Mrs. Columbus's § 1983 Due Process claimed failed, so must her State Claim under the Act.

Defendants' Motion to Dismiss Count XIV is GRANTED.

### 5. Breach Of Contract Claim

In Count IV, Mr. Columbus brings a breach of contract claim against the Town, arguing that it violated his collective bargaining agreement by suspending him without pay. Defendants argue that Mr. Columbus does not allege that the Town breached his contract. This is incorrect. Count IV states that "Mr. Columbus was wrongfully and illegitimately suspended in violation of his collective bargaining agreement with [the] town." Although Count IV includes many superfluous references to Defendants improper behavior, it does allege a breach of contract.

Defendants' Motion to Dismiss Count IV is DENIED.

### 6. Suspension In Violation Of Public Policy Claim

██ In Count V, Mr. Columbus brings claims against Nutting and the Town under a cause of action he styles "Suspension In Violation Of Public Policy." Mr. Columbus alleges that those Defendants violated public policy by suspending him for his refusal to illegally persecute the Donovans.

This count has merit. Even cursory examination of the caselaw on public policy claims would have revealed that they are limited to cases of at-will employment, where the employee cannot bring a breach of contract claim because he or she has no contract right in the job. *See Hobson v. McLean Hospital Corp.*, 402 Mass. 413, 416, 522 N.E.2d 975 (1988) ("Liability can be imposed on an employer who terminates an at-will employee in violation of a clearly established public policy."). Mr. Columbus does not allege that he was an at-will employee. In fact, if he were an at-will employee, his claims based on violations of property and contract rights would fail.

Mr. Columbus cited *Hobson* and another case, *DeRose v. Putnam Management Co., Inc.*, 398 Mass. 205, 496 N.E.2d 428 (1986), in his oppositions to the motions to dismiss. Both cases make it perfectly clear that Mr. Columbus cannot bring a public policy claim.

Count V is DISMISSED.

7. Intentional Infliction Of Emotional Distress Claim

In Count VI, Mr. Columbus brings claims for intentional infliction of emotional distress against Biggio, Nutting, and Solomon.

■ In order to state a cognizable claim for intentional infliction of emotional distress, Mr. Columbus must allege that: (1) Defendants "intended to inflict emotional distress or ... should have known that emotional distress was the likely result of [their] conduct"; (2) Defendants' "conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community"; (3) Defendants "actions ... were the cause of [his] distress"; and (4) the distress "was severe and of a nature that no reasonable [person] could be expected to endure it." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976) (internal citations and quotations

omitted). Defendants argue that Mr. Columbus has not alleged sufficiently extreme and outrageous conduct.

■ With regard to Biggio and Solomon, Mr. Columbus alleges that he "was a co-conspirator in the implementation of Defendants' hostile work environment against Mr. Columbus and in the Defendants' unjustified suspension of Columbus...." As discussed previously, however, Columbus offers no specific allegations regarding what role Biggio played in creating a hostile work environment or suspending Columbus. Additionally, the Complaint alleges that Nutting, not Biggio or Solomon, had control over Columbus's working conditions and suspension. These allegations against Biggio and Solomon are thus too vague and conclusory to be credited.

■ Columbus also alleges that Biggio inflicted emotional distress by "facilitat[ing] the killing of the Donovan's horses...." Even if this allegation were sufficiently specific, it could not support the emotional distress claim, as a reasonable jury could not find that killing the Donovan's horses could inflict great distress on Columbus.

■ With regard to Nutting, although it is a close call, Columbus has sufficiently alleged conduct meeting the "extreme and outrageous" threshold. Columbus accuses Nutting of imposing improper restrictions on his job and suspending him as part of a campaign to force him to persecute the Donovans. Although this behavior may not seem "beyond all possible bounds of decency," Massachusetts courts are fairly liberal about allowing emotional distress claims to go to the jury. Although "hurt feelings resulting from bad manners, or relatively minor annoyances do not justify recovery for intentional or reckless infliction of emotional distress," claims should go to the jury "if reasonable people could differ on whether the conduct is 'extreme and outrageous.'" *Boyle v. Wenk*, 378 Mass. 592, 595–97, 392 N.E.2d

1053 (1979). Under this lenient standard, courts have allowed claims to go forward in cases not particularly more shocking than the one at hand. For example, in *Agis,* the plaintiff was a waitress employed at the defendant's restaurant. *Agis,* 371 Mass. at 141, 355 N.E.2d 315. The manager called a meeting of the wait staff and announced that he knew one of them was stealing from the restaurant, and that "until the person or persons responsible were discovered, he would begin firing all the present waitresses in alphabetical order, starting with the letter 'A.'" The manager then fired Agis, the plaintiff. *Id.* The court held that this sufficiently stated an emotional distress claim. *Id.* at 145, 355 N.E.2d 315. In *Boyle,* the court held that it was for a jury to decide whether the plaintiff had an emotional distress claim against a defendant who repeatedly called and harassed her even though she was recovering from a stay in the hospital and repeatedly begged the defendant to leave her alone. *See Boyle,* 378 Mass. at 593–94, 392 N.E.2d 1053. Nutting, by pressuring Columbus to persecute the Donovans and by imposing onerous job requirements and suspending him when he refused to participate, engaged in comparable conduct.

Count VI is therefore DISMISSED with regard to Biggio and Solomon, but not with regard to Nutting.

### 8. Negligent Infliction Of Emotional Distress Claim

In Count VII, Columbus brings claims against all three individual defendants for negligent infliction of emotional distress.

With regard to Biggio and Solomon, as discussed above, Columbus has not sufficiently alleged sufficient involvement with his suspension or the change in his work conditions.

 Nutting argues that the claim against him is barred by the exclusivity provision of the Worker's Compensation Act, Mass.Gen.Laws ch. 152, § 24, which "bars common law actions against employ-

ers where: (1) the plaintiff is shown to be an employee; (2) her condition is shown to be a personal injury within the meaning of the worker's compensation act; and (3) the injury is shown to have arisen out of and in the course of her employment." *Brown v. Nutter, McClennen, and Fish,* 45 Mass. App.Ct. 212, 215, 696 N.E.2d 953 (1998). The statute "also provides the exclusive remedy against coemployees who engage in tortious conduct within the course of their employment and in furtherance of the employer's interest." *Id.* at 216, 696 N.E.2d 953. This "co-employee immunity" does not immunize Nutting from Columbus's emotional distress claim if Nutting's "alleged tortious conduct was not within the course of his employment or did not further [the Town's] interest." *Id.* at 216, 696 N.E.2d 953. The Complaint alleges that Nutting acted to further Biggio's feud with the Donovan's, which is "not remotely related to the employer's interests." *Id.* at 217, 696 N.E.2d 953 (citation and internal quotation marks omitted). As Nutting was allegedly motivated by a private vendetta rather than the Town's interest, he is not protected by co-employee immunity.

Count VII is therefore DISMISSED with regard to Biggio and Solomon, but not with regard to Nutting.

### 9. Mass.Gen.Laws ch. 151B—Age Discrimination Claim

 In Count VIII, Mr. Columbus brings claims against Nutting and the Town under Mass.Gen.Laws ch. 151B, alleging age discrimination. To establish a prima facie case of age discrimination, a plaintiff must allege that he: (1) is older than 40; (2) performed his job at an acceptable level; (3) was terminated or subject to an adverse employment action; and (4) a similarly or less qualified younger person replaced him. *See Blare v. Husky Injection Molding Systems Boston, Inc.,* 419 Mass. 437, 441, 646 N.E.2d 111 (1995).

Defendants argue that Columbus has not sufficiently alleged that he performed his job at an acceptable level. The Com-

plaint, however, states that he "performed his job duties as Building Inspector in a competent, acceptable and satisfactory manner." Defendants cite no caselaw stating that Columbus is obligated to allege anything beyond this, and it is hard to imagine what more could be required.

Defendant's Motion to Dismiss Count VIII is therefore DENIED.

### 10. Mass.Gen.Laws ch. 151B—Retaliation Claims

In Count IX, Columbus brings a retaliation claim under Mass.Gen.Laws ch. 151B against Nutting, Solomon and the Town. Columbus alleges that Nutting and Solomon suspended him in retaliation for his filing an MCAD complaint. This claim fails as against Solomon. Columbus has not alleged what Solomon's part in the suspension was and, according to the Complaint, Nutting, not Solomon, had the power to suspend Columbus. Columbus's broad allegations that Solomon "conspired" to suspend him do not sufficiently describe the improper conduct required.

Nutting argues that the retaliation claim should be dismissed against him because Columbus has not sufficiently alleged facts supporting a causal link between the MCAD complaint and the suspension. Columbus did allege such a link, however, and Columbus cites no authority holding that, in addition to alleging a causal link, a retaliation plaintiff must also allege facts supporting the link. Even if there were such a requirement, however, Columbus satisfies it by alleging that the suspension took place less than three months after he filed the MCAD complaint. Such temporal proximity may show a "causal connection." *Ruffino v. State St. Bank & Trust Co.*, 908 F.Supp. 1019, 1046 (D.Mass.1995) (in summary judgment context, where "direct evidence [of retaliation] is missing, temporal proximity may provide the necessary nexus.").

Count IX is therefore DISMISSED as against Solomon, but not as against Nutting and the Town.

### 11. Defamation Claim

In Count X, Columbus alleges that Biggio defamed him by telling Donovan that "Bob [Columbus] isn't a team player, he is crooked and can be bought off, he is a wimp and can be replaced." Columbus also alleges that Biggio knew that these charges were false.

Defendant's Motion to Dismiss argues that the defamation claim should be dismissed because the statement falls within the protection provided to opinion. " 'A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.' " *National Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp.*, 379 Mass. 220, 227, 396 N.E.2d 996, *cert. denied*, 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980) (quoting § 556 Restatement (Second) of Torts (1977), cmt. C). Defendant's argument fails because the statement in question is not based on disclosed or assumed nondefamatory facts. Even if the statement represents Defendant Biggio's opinion, it is not protected if " 'it implies the allegation of undisclosed defamatory facts as the basis for the opinion.' " *Id.* The statements by Biggio imply that he has knowledge of undisclosed defamatory facts that support the opinions that Mr. Columbus is "crooked," capable of "being bought off," and a "wimp."

Because Biggio's comments fail to qualify as a protected statements of opinion, Defendant's Motion to Dismiss as to Count X is DENIED.

### 12. Loss of Consortium Claim

Defendants argue that Counts XI and XV, by Mr. Columbus and Mrs. Columbus respectively, should be dismissed because neither has advanced a

viable personal injury claim upon which loss of consortium can be based. This is a sound argument because, according to the "general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury." *Sena v. Commonwealth,* 417 Mass. 250, 263, 629 N.E.2d 986 (1994). Further, neither federal or Massachusetts civil rights claims may serve as the basis for loss of consortium claims. *See Staffier v. Sandoz Pharmaceuticals Corp.,* 888 F.Supp. 287, 293 (D.Mass.1995) *affd.,* 78 F.3d 577, 1996 WL 68238 (1996) ("a spouse is not entitled to assert a claim for consortium ancillary to an action under the Massachusetts Civil Rights Act.") (citing *Tauriac v. Polaroid, Corp.,* 716 F.Supp. 672 (D.Mass.1989) (federal civil rights claim may not serve as basis; no reason to believe Massachusetts civil rights statutes intended to serve as basis)); *Suarez v. Belli,* 6 Mass.L.Rptr. 359, # CA96–00748, 1997 WL 39918, at *4 (Mass.Super.Ct. Jan. 13, 1997) ("The court is not aware of any authority that would permit loss of consortium damages for the state civil rights claim.").

#### a. Mr. Columbus

Mr. Columbus's claim thus requires an underlying tortious act by Defendants against Mrs. Columbus. No such claim is advanced. Mrs. Columbus's various claims against Nutting and the Town of Stoneham all fall under federal and state civil rights statutes.

Count XV is therefore DISMISSED.

#### b. Mrs. Columbus

██ Mr. Columbus has, however, asserted tort claims that survive Defendants' Motions to Dismiss. As discussed above, his claims for intentional infliction of emotional distress and negligent in action of emotional distress survive as against Defendant Nutting (but no others). In addition, his defamation claim against Biggio also survives. Those torts against Mr. Columbus can therefore serve as a basis for the loss of consortium claim by Mrs. Columbus.

Count XI is DISMISSED with regard to Solomon, but not with regard to Nutting and Biggio.

### B. Motion to Strike Prejudicial Material

██ Plaintiff objects that Defendants' Supplemental Brief contains assertions not relevant to deciding the legal sufficiency of the Complaint. Plaintiffs seek to have the irrelevant material stricken as prejudicial. As none of the information objected to by Plaintiffs was relied upon in deciding the Motions to Dismiss, the Motion to Strike is DENIED as moot.

### III. Conclusion

Defendants' Motions to Dismiss are denied in part, and granted in part. Plaintiff's Motion to Strike is denied.

AN ORDER SHALL ISSUE.