**LEOPOLDO FONTANILLAS,
INC. Plaintiff**

v.

**LUIS AYALA COLON SUCESORES,
INC.; et al. Defendants**

No. CIV. 02–2835(SEC).

United States District Court,
D. Puerto Rico.

Sept. 24, 2003.

---

Nelson Rivera–Cabrera, San Juan, PR, Rosanna Bayonet–Tartak, Carolina, PR, for Plaintiffs.

José A. Bague–Soto and Erick A. Tulla, Rivera Tulla & Ferrer, Hato Rey, PR, José L. Gandara, Bauzá & Dávila, San Juan, PR, Daniel Molina–López and Hernando A. Rivera–Diaz, Totti & Rodríguez, Hato Rey, PR, Luis E. Padron–Rosado, Esq., Sanchez Betances & Sifre, P.S.C., San Juan, PR, Ramon A. Torres–Morales, Ponce, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Plaintiff in the above-captioned case has brought suit against several Defendants under the federal antitrust statutes, the

Commonwealth of Puerto Rico's antitrust laws, and for breach of contract and tortious interference with contractual relations under the Puerto Rico Civil Code (Docket # 1). Defendants have filed several motions to dismiss the complaint on different grounds (Docket## 18, 19, 21 and 23). Plaintiff has opposed said motions (Docket # 41 and 42), Defendants have filed several replies to said opposition (Docket # 46 and 48), and Plaintiff has finally countered with a sur-reply (Docket # 54). Having reviewed all the parties' arguments and the relevant case law, Defendants' motions will be **GRANTED in part and DENIED in part**.

**Factual Background**

Plaintiff is and has been engaged in the business of stevedoring, loading and unloading cargo from commercial ships in the Port of Ponce, as a Commercial Maritime Agent. Plaintiff alleges that, as part of said enterprise, it had handled all of the loading and unloading for Defendant Puerto Rico Cement Company, Inc. (PRCC) for several decades. Furthermore, Plaintiff states that it had established what it refers to as two "gentlemen's agreements"[1] with PRCC and Defendant Luis Ayala Colón Sucesores, Inc. (AYACOL), respectively. The oral agreement with PRCC consisted of a long-standing business relationship pursuant to which Plaintiff had been PRCC's exclusive Commercial Maritime Agent. On the other hand, Plaintiff alleges that it had reached another oral agreement with AYACOL, its principal competitor in the business of Commercial Maritime Agency in the Port of Ponce, pursuant to which they would not solicit each other's clients and would not otherwise try to interfere with each other's businesses.

Plaintiff alleges, however, that AYACOL, at some point in the recent past, reneged on the above-described agreement and began to attempt to monopolize the market for Commercial Maritime Agents in the Port of Ponce. As part of said attempt, Plaintiff argues, AYACOL breached its agreement with Plaintiff, and tortiously interfered with Plaintiff's contractual relationship with PRCC. As a result, and following the alleged purchase of a controlling interest of PRCC stock by Defendant Cemex, PRCC (and/or Cemex) finally decided to end its business relationship with Plaintiff and give all its business to AYACOL. In addition, Plaintiff alleges that AYACOL conspired with PRCC, Defendant Cemex and Defendant the Port of Ponce[2] and did, in fact, unreasonably re-

---

1. As Defendants keenly point out, Black's Law Dictionary defines the term "gentlemen's agreements" as "unsigned and **unenforceable** agreements made between parties who expect its performance because of good faith." Black's Law Dictionary at 473 (6th ed.1991). Nonetheless, the Court will interpret Plaintiff's description of these agreements as oral contracts between the parties. The enforceability of said agreements is a matter of law for the Court to resolve, not for the parties to establish through their casual characterizations.

2. Plaintiff has also brought suit against the individual Defendants Ramón Torres Morales and Juan Arruza Latimer. It is unclear from Plaintiff's complaint whether these Defen-

dants are being sued in their official or personal capacities. To the extent that they are being sued in their official capacities, such a suit is equivalent to a suit against the Port of Ponce, which is also equivalent to a suit against the Municipality of Ponce, as will be discussed later. Since they are all one and the same, we will refer to all of these Defendants as the Port of Ponce. On the other hand, to the extent that Plaintiff intended to bring suit against these individual Defendants in their personal capacity, we note that there are no allegations in the complaint whatsoever which establish any actions by these Defendants which might be related to Plaintiff's alleged injuries. In fact, there are no specific allegations regarding these Defendants, other than the fact that they were the Director and

strain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Furthermore, Plaintiff has sued all four Defendants for tortious interference with its contracts, attempting to monopolize the Commercial Maritime Agency business, conspiring to and maintaining a monopoly in said industry, and conspiring to misappropriate trade secrets, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, the Puerto Rico antitrust statutes, 10 P.R. Laws Ann. §§ 258 *et seq.*, and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.

Upon facing Plaintiff's myriad allegations, Defendants have raised a veritable plethora of arguments requesting that the complaint be dismissed in its entirety. We have digested all the issues and will discuss our approach to them while attempting to group them in the most reasonable and efficient manner.

### Claims Against Defendant Cemex

First off, we will discuss Defendant Cemex, S.A. de C.V.'s motion to dismiss for lack of personal jurisdiction and for insufficiency of service of process, under Fed. R.Civ.P. 12(b)(2) and (5). We should note that Plaintiff did not bring suit against Cemex, S.A. de C.V., but rather against Cementos de Mexico, S.A. a/k/a Cemex. Defendant Cemex S.A. de C.V. has averred in its motion that there are no corporations under the names Cementos de Mexico, S.A. or Cemex. As such, any claims against these non-existent entities would have to be dismissed. On the other hand, the Court will construe Plaintiff's pleading liberally, and interpret that Plaintiff actually intended to sue Cemex S.A. de C.V.[3]

Now, let us take a look at Defendant Cemex S.A. de C.V.'s argument for dismissal for lack of personal jurisdiction. In order for a court to be able to make a binding decision which conforms with due process, the court must have personal jurisdiction over each party to the case. *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir.1999). The plaintiff always has the burden of establishing that the forum court has personal jurisdiction over the defendant. *Mass. Sch. of Law at Andover v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998); *Rodríguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997). In ruling on this issue, the court has a number of different standards by which it may review the record to determine whether the plaintiff has met its burden. *See Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 674–78 (1st Cir.1992). When a court holds an evidentiary hearing on the issue, one of two standards applies: either plaintiff must demonstrate a likelihood of the existence of all facts necessary to establish personal jurisdiction or plaintiff must show by a preponderance of the evidence the facts which support personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145–47 (1st Cir.1995); *Mohajer v. Monique Fashions*, 945 F.Supp. 23, 26 (D.P.R.1996).

Sub-director of the Port of Ponce. Under these circumstances, any causes of action against them must be **DISMISSED WITH PREJUDICE**.

3. On the other hand, we do not believe it would be appropriate to interpret that Plaintiff intended to sue Cemex Ten Investments, B.V. Plaintiff's complaint specifically states that the party sued under the name "Cementos de Mexico, S.A. a/k/a Cemex" is a corporation duly organized **pursuant to the laws of the United States of Mexico**. Cementos de Mexico, S.A. a/k/a Cemex, however, is a private company with limited liability organized and existing under the laws of the Netherlands.

A third method often used at the early stages of litigation is the prima facie standard. *Rodríguez*, 115 F.3d at 83–84. Under this least taxing of the standards, a plaintiff must make a showing as to each fact required to satisfy both the local forum's long-arm statute and the Constitution's due process clause. *Id.* The district court does not sit as a factfinder; rather, "it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.* at 84. To make a prima facie showing, the plaintiff may not rest on unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction. *Foster–Miller*, 46 F.3d at 145; *Boit*, 967 F.2d at 675. In the present case, no party has requested an evidentiary hearing and the litigation is in its early stages. Moreover, the First Circuit has ruled that unless the district court otherwise informs the parties, it is to be understood that the prima facie standard will be used. *See Rodríguez*, 115 F.3d at 84. Accordingly, the Court will employ the prima facie standard in ruling on the motion to dismiss.

There are two types of personal jurisdiction: general and specific. *Mass. Sch. of Law*, 142 F.3d at 34; *Pritzker v. Yari*, 42 F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in activity in the forum which is unrelated to the suit and which is systematic and continuous. *Foster–Miller*, 46 F.3d at 144 *citing United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992).

Specific jurisdiction requires a plaintiff to establish two conditions: first, that the forum has a long-arm statute which purports to grant jurisdiction over the defendant; and second, that the court's exercise of personal jurisdiction over the defendant pursuant to that statute would comport with the Constitution's strictures. *Foster–Miller*, 46 F.3d at 144; *Pritzker*, 42 F.3d at 60. With regard to this first condition, the Puerto Rico long-arm statute provides in pertinent part that a court in Puerto Rico has jurisdiction over a person not domiciled in Puerto Rico if the action arises because that person "[t]ransacted business in Puerto Rico personally or through an agent" or he "[p]articipated in tortious acts within Puerto Rico." 32 P.R. Laws Ann. app. III, R. 4.7(a)(1) and (2). This statute has been interpreted to include as a "business transaction" the sending of mail to Puerto Rico from another jurisdiction, *see Dávila Fermín v. Southeast Bank, N.A.*, 738 F.Supp. 45, 48 (D.P.R.1990), and to include as tortious conduct an act committed outside Puerto Rico but which could reasonably be expected to cause injury within it, *see Mangual v. Gen. Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983); *Rivera v. Bank One*, 145 F.R.D. 614, 620 (D.P.R.1993).

In its motion, Defendant Cemex, S.A. de C.V. has stated that it is a corporation incorporated under the laws of the United Mexican States with its principal place of business in Monterrey, Mexico. Furthermore, Defendant avers that it has not, by itself or through any agent: 1) made shipments, sales or deliveries of goods into Puerto Rico; 2) applied for or obtained a license to do business in Puerto Rico; 3) has not maintained any office, place of business, or bank accounts in Puerto Rico; and 4) has not acquired any real property located in Puerto Rico. These facts have not been controverted by Plaintiff, and are supported by unsworn statements under penalty of perjury provided by Defendant with its motion. Under these circumstances, we find that Plaintiff has failed to establish a *prima*

*facie* showing that Defendant Cemex, S.A. de C.V. has engaged in activity in the forum which is unrelated to the suit and which is systematic and continuous, so as to grant us general personal jurisdiction over Defendant. Furthermore, Plaintiff has also failed to establish a *prima facie* showing that Puerto Rico's long-arm statute reaches Defendant Cemex, S.A. de C.V., since Plaintiff has brought no evidence that Defendant "[t]ransacted business in Puerto Rico personally or through an agent" or that it "[p]articipated in tortious acts within Puerto Rico." 32 P.R. Laws Ann. app. III, R. 4.7(a)(1) and (2).[4] Therefore, Defendant Cemex, S.A. de C.V.'s motion is **GRANTED**, and the complaint against it will be **DISMISSED WITHOUT PREJUDICE**.

**Standard of Review Applicable to All Other Motions—Fed. R. Civ. P. 12(b)(6)**

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v.*

*Arrillaga–Beléndez*, 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (*quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993). Yet courts must bear in mind that apart from allegations of civil rights or RICO violations, fraud, mistake or standing, which are not implicated here, "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) *quoting Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17

---

4. It should be noted that the bare allegations regarding tortious conduct of "Cemex" included in the complaint refer to the corporation which merged with PRCC, not to Defendant Cemex, S.A. de C.V.

(1st Cir.1992) (internal quotation marks omitted). In so doing, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.'" *Id.*

### Claims for Tortious Interference with Contractual Relations

Defendants have also moved to dismiss Plaintiff's claims for tortious interference with their contracts. In particular, we understand that these claims refer to Defendants' alleged interference with the two oral agreements between Plaintiff, and PRCC and AYACOL, respectively.

■■ To establish a tortious interference claim, Plaintiff would have to show: 1) the existence of a contract; 2) that the interfering party acted with intent and knowledge of the existence of a contract; 3) that plaintiff suffered damages; and 4) that there exists a causal link between the injury and the interfering party's actions. *General Office Products Corp. v. A.M Capen's Sons, Inc.,* 115 D.P.R. 553, 558–559 (1984). The Supreme Court of Puerto Rico, however, specified that, **if an expectancy or economic relationship was affected without a contract, the action for tortious interference cannot prosper.** *Id.* " 'When the contract interfered with is terminable at will, however, the privilege of competition has been recognized. In such a case there is no contract right to have the relation continued, but only an expectancy ...'" *Dolphin Int'l of Puerto Rico v. Ryder Truck Lines,* 127 D.P.R. 869, 883 (1991) *quoting* W.P. Keeton, *Prosser and Keeton on Torts,* at 981 (5th ed.1984). "[T]ortious liability interference cannot be determined against a defendant **when the underlying prejudicial contract has no fixed period of time.** In other words, ... the third person interfering with said contractual relation **will not be held liable in an action for damages for tortious interference if the contractual relation is terminable at the parties' will."** *A.M. Capen's Co., Inc. v. American Trading and Production Corp.,* 200 F.Supp.2d 34, 48 (D.P.R.2002) (emphasis added).

■■ In the present case, Plaintiff cannot allege a tortious interference claim against any of the parties. Plaintiff makes no allegations regarding the expiration date or term of duration of the purported "gentlemen's agreements." Hence, such alleged agreements were terminable at will, and no contract right to continue a business relationship existed. Under such circumstances, no cause of action for tortious interference may arise.

■■ Furthermore, in a twist of something between cynical irony and poetic justice, we note that Plaintiff's alleged agreement with AYACOL appears to have been a blatant violation of the very same antitrust laws whose protection Plaintiff now seeks. From Plaintiff's own allegations and arguments, it can be concluded that Plaintiff and AYACOL had, for several decades, effectively divided the Commercial Maritime Agency market at the Port of Ponce between themselves. The creation and maintenance of such a cartel constitutes a horizontal restraint of trade of the most perverse kind. In fact, these types of restraint are considered *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. *United States v. Topco Associates, Inc.,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). Such an illegal agreement is unenforceable under Article 1207 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3372. Of course, absent a valid contract, there can be no tortious interference action.

For the foregoing reasons, Plaintiff's claims of tortious interference against all

Defendants must be **DISMISSED WITH PREJUDICE.**

## Misappropriation of Trade Secrets

 In Count Six of its complaint, Plaintiff makes a cryptic reference to an alleged misappropriation of trade secrets. However, the rest of the complaint is devoid of any allegations whatsoever regarding what trade secrets were appropriated how and by whom. Under these circumstances, this claim cannot prosper. In any case, the only source of law cited by Plaintiff in support of these claims is the *Pick-Barth* doctrine. *See Albert Pick-Barth Co. v. Mitchell Woodbury Corporation,* 57 F.2d 96 (1st Cir.1932). Said doctrine, however, has been implicitly overruled and is no longer good law. *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.* 508 F.2d 547, 561–562 (1st Cir.1974). As such, Plaintiff's claims for misappropriation of trade secrets and under the *Pick-Barth* doctrine will be **DISMISSED WITH PREJUDICE.**

## Claims for Breach of Contract

Plaintiff alleges claims for breach of contract. Again, the only two contracts to which Plaintiff makes reference in the complaint are the two oral agreements described above between Plaintiff, and PRCC and AYACOL, respectively. With regards to the agreement with AYACOL, we have already explained that said oral understanding constituted, according to Plaintiff's own description of its terms, a *per se* violation of the antitrust laws. Such an illegal agreement is unenforceable under Article 1207 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3372.

 On the other hand, Plaintiff also alleges that it had a valid contract with PRCC whereby it provided PRCC with its services as a Commercial Maritime Agency. However, as discussed above, Plaintiff makes no allegations regarding the expiration date or term of duration of the purported "gentlemen's agreement" with PRCC. Hence, said agreement was terminable at will, and no contract right to continue a business relationship existed. No breach arises, then, from the termination of the contract. Furthermore, Plaintiff has not alleged that PRCC failed to comply with its obligations under the contract, while it was still in effect. In other words, Plaintiff does not claim that PRCC owes any monies for the performance of any type of services under the contract. Consequently, Plaintiff's breach of contract action cannot prosper. For these reasons, Plaintiff's claims for breach of contract must be **DISMISSED WITH PREJUDICE.**

## Claims Against PRCC

Plaintiff has also brought antitrust claims against PRCC. Let us analyze each type of antitrust claim at a time.

*Violations of Section 1 of the Sherman Act—Unreasonable Restraints on Trade*

 Section 1 of the Sherman Act, 15 U.S.C. § 1 prohibits any contracts, combinations and conspiracies that unreasonably restrain trade or commerce. Plaintiff basically alleges that PRCC conspired with AYACOL and the Port of Ponce in a way which unreasonably restrained free trade in the market for Commercial Maritime Agency. The problem with Plaintiff's argument in this respect is that it basically avers that Defendant PRCC was conspiring against itself by helping AYACOL monopolize a market in which PRCC was a **customer, not a producer.** Such a monopoly, of course, would have had the effect of allowing AYACOL to charge PRCC noncompetitive prices. Plaintiff's logic stretches common sense to its breaking point.

In *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1103 (7th Cir.1984), the Court of Appeals for the Seventh Circuit confronted precisely this type of a situation. On that occasion, the plaintiff, a car transport company, brought suit against Ford Motor Company, a purchaser of hauling services. *Id.* at 1108. Plaintiff alleged that, in violation of the antitrust act, Ford conspired to injure Plaintiff, which was at the time the car transport company contracted by Ford, and replace it with a competitor for the transport of new Ford vehicles from Ford's plants. *Id.* The court found that "it is inherently implausible that Ford, which is alleged to have total control over its carriers, would conspire with Nu–Car to eliminate Car Carriers so that Nu–Car could later charge Ford non-competitive prices." *Id.* at 1107 n. 4. The court further held that "it is inherently implausible that Ford, as a buyer that could dictate and control the tariffs of its suppliers of transportation services, would conspire in order to allow its new carrier, Nu–Car to charge noncompetitive prices; the plaintiffs are alleging in essence, that Ford conspired to injure itself." *Id.* at 1109. In the present case, Plaintiff's basis for inferring that PRCC participated in a conspiracy to restrain trade in the Commercial Maritime Agency market is equally inherently implausible and outrageous as it was in *Car Carriers*.

Plaintiffs factual assertions provide that PRCC was a customer and not a competitor of Plaintiff and that it elected to replace its Commercial Maritime Agent on the grounds that AYACOL offered discounts and other considerations that Plaintiff was not able to give. Plaintiff's allegations are insufficient to sustain an antitrust violation. *Id.* Instead, Plaintiff's own allegations appear to show the competitive process at work as contemplated by antitrust law.

Moreover, Plaintiff's conspiracy claims are devoid of any reference to any specific allegation regarding a written agreement or even a basis for inferring a tacit agreement between PRCC and the other Co-defendants in pursuit of a contract, concerted action, or conspiracy to violate antitrust laws. *See, DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir.1999). Instead, PRCC's conduct is consistent with permissible competition and its freedom to switch service providers. Pursuant to Plaintiff's own allegations, PRCC, as a customer of Commercial Maritime Agents, made a business decision to use a different Agent after having been approached by AYACOL. Under the holding and logic of *Car Carriers*, PRCC's actions do not support an inference of PRCC's participation in an antitrust conspiracy, in violation of Section 1 of the Sherman Act.

*Violations of Section 2 of the Sherman Act—Monopolization*

"Section 2 of the Sherman Act prohibits monopolies in interstate trade or commerce. Conduct violates this section where an entity acquires or maintains monopoly power in such a way as to preclude other entities from engaging in fair competition." *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992); *see also*, 15 U.S.C. § 2. "Monopoly power is the 'power to control prices or exclude competition in the relevant market.'" *Sea–Land Service, Inc., v. Atlantic Pacific Int'l, Inc.*, 61 F.Supp.2d 1102, 1114 (1999). "The two elements required to maintain a section 2 monopoly claim are: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident."

*TV Communications Network, Inc.*, 964 F.2d at 1025.

 "Specific intent to monopolize is an element of both offenses ... [t]he mere intention to exclude competition and to expand one's own business is not sufficient to show a specific intent to monopolize." *Great Escape, Inc. v. Union City Body*, 791 F.2d 532, 541 (7th Cir.1986).

> The very nature of unfettered competition is exclusionary to the extent that making a sale and increasing an available share of business is its object. Were all that were required by the specific intent requirement an intent to prevail generally in the market, the very competitive behavior that the antitrust laws were intended to protect would instead be prohibited.. The acts from which one can infer specific intent must be essentially predatory in nature.

*Id.* In the present case, there is no possibility that PRCC attempted, intended or actually succeeded in creating or maintaining a monopoly in the Commercial Maritime Agency market; or in the market for stevedoring, loading and unloading of merchandise in the Port of Ponce, because PRCC is not dedicated to such a business and is actually a customer of those providing such a service. As such, it cannot possess monopoly power in the relevant market. For the same reason, PRCC cannot be interested in acquiring monopoly power. As alleged by Plaintiff itself, "PRCC is dedicated to the business of manufacturing, selling and distributing cement and cement related products for the manufacture of which it constantly imports to the Island of Puerto Rico raw material from other jurisdictions." Docket # 1 at ¶ 8. Under these circumstances, the Court must find that Plaintiff has failed to properly allege a claim under Section 2 of the Sherman Act against Defendant PRCC.

*Violations of Section 4 of the Clayton Act—Tying Arrangements*

 Plaintiff also avers that PRCC was involved in "tying arrangements" to unreasonably restrain trade, in violation of Section 4 of the Clayton Act, 15 U.S.C. § 15 (or possibly Section 1 of the Sherman Act). "A so-called tying arrangement exists when a seller conditions the sale of one product or service, the tying product or service, on the buyer's purchase of another product or service, the tied product or service." *Leyba v. Renger*, 874 F.Supp. 1229, 1232–1233 (D.N.M.1994) *citing Beard v. Parkview Hosp.*, 912 F.2d 138, 140 (6th Cir.1990); *accord, Sea–Land Service, Inc.*, 61 F.Supp.2d at 1108. "To prevail on a tying claim, a plaintiff must first show that the scheme involves two separate products." *Sea–Land Service, Inc.*, 61 F.Supp.2d at 1108. And furthermore, "[n]o illegal tying arrangement can exist, however, unless the supplier of the tying product or service receives a direct economic benefit from the sale of the tied product or service." *Leyba*, 874 F.Supp. at 1233.

 In this case, the complaint is somewhat devoid of any specific factual assertions regarding the alleged tying arrangement between PRCC, AYACOL, and the Port of Ponce. The main body of the complaint is also unclear as to the identity of the other product Plaintiff is referring to when it makes reference to a tying arrangement. However, Plaintiff's prayer for relief provides some type of clue regarding its conclusory allegation of a tying arrangement. Plaintiff requests that Defendants be enjoined from "[t]ying, in any war [sic] or form, the delivery of docking or mooring permits or any other documentation required to moor or dock a commercial cargo ship in the facilities of the Port of Ponce to the assigning of the handling of the Maritime Agency and stevedoring

and loading and unloading of said ship to Ayala." Docket # 1 at ¶ 86. PRCC does not offer as a product or service the delivery of docking or mooring permits or any other documentation to moor or dock commercial cargo. Neither is PRCC engaged in the business of acting as a Commercial Maritime Agent, as discussed above. Rather, PRCC is a customer who pays for such services. Hence, PRCC does not receive a "direct economic benefit" from the production, sale or performance of such products and services, but would instead be the party most prejudiced in the event of a tying arrangement, since PRCC is the consumer of the products and services being tied. Therefore, Plaintiff's allegations fail to state a claim regarding "tying arrangements" under the Clayton Act against Defendant PRCC.

*Conclusion*

For all the reasons discussed in this section of this Opinion and Order, and since the same arguments and logic discussed as to the federal antitrust causes of action apply equally with respect to the Commonwealth antitrust law claims, PRCC's motion to dismiss is **GRANTED** in its entirety, and all causes of action against it will be **DISMISSED WITH PREJUDICE.**

**Claims Against the Port of Ponce** [5]

Plaintiff has also brought claims against the Port of Ponce under both the federal and the Commonwealth antitrust laws. As Defendant Port of Ponce points out, however, state action is normally exempted from the reaches of

federal antitrust law. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978). Under the so-called state action doctrine, a state-created regulatory scheme that is a clearly articulated system of regulation designed to displace antitrust law is outside the reach of the antitrust laws. *Id.* This immunity extends to municipalities when the state has clearly delegated to them the power to control a particular area of commerce. *Southern Motor Carriers Rate Conference, Inc. v. United States,* 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985).

In the case before us, the municipality has invoked its immunity under the state action doctrine and has asserted that the Port of Ponce is no more than an administrative division of the Municipality of Ponce, created through an Ordinance of December 7th, 1911, enacted by the Executive Council of Puerto Rico, one of the legislative bodies of the government of Puerto Rico set up by Section 18 of the Foraker Act, 31 Stat. 81. Pursuant to said Ordinance, which is still valid law and has not been abrogated, a right or franchise was given to the Municipality of Ponce to operate and maintain a pier on the shorefront of the port of Ponce. Furthermore, all property rights, budget allocations and ultimate control over the Port of Ponce was assigned to the Municipality's municipal council, the Municipality's legislative body. As such, Defendant Port of Ponce has effectively established that the Port of

---

5. As mentioned in a previous footnote, Plaintiff has also brought suit against the individual Defendants Ramón Torres Morales and Juan Arruza Latimer. It is unclear from Plaintiff's complaint whether these Defendants are being sued in their official or personal capacities. To the extent that they are being sued in their official capacities, such a suit is equivalent to a suit against the Port of Ponce, which is also equivalent to a suit against the Municipality of Ponce, as will be discussed in more detail in this section of the Opinion and Order. Since all these Defendants are one and the same, we will refer to all of them as the Port of Ponce.

Ponce is a subdivision or arm of the Municipality. This averment has not been controverted by Plaintiff. Therefore, we must conclude that the state action exemption is applicable to Defendant Port of Ponce, since it is part of the Municipality, and the Commonwealth government has clearly delegated to the Municipality the power to control the particular area of commerce that is the Port of Ponce.

In resolving a motion to dismiss such as the one at bar, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996). However, **it is the plaintiff who bears the ultimate burden of proving that subject matter jurisdiction exists,** *Aversa,* 99 F.3d at 1209, and "argumentative inferences favorable to the pleader should not be drawn." *Atlantic Mutual Insurance Company v. Balfour Maclaine International Ltd.,* 775 F.Supp. 101, 104 (S.D.N.Y.1991). Since Plaintiff has failed to controvert the applicability of the state action immunity to Defendant Port of Ponce in this case, we are hesitant to exercise subject matter jurisdiction over said Defendant in this case.

■ Moreover, the federal causes of action against Defendant Port of Ponce may also be dismissed on the merits. With respect to the claim under Section 1 of the Sherman Act, Plaintiff does not make any specific allegations regarding an illegal contract, combination, or conspiracy between the Co-defendants to embark on the unreasonable restraint of trade. "Section 1 of the Sherman Act, in contrast, reaches unreasonable restraints of trade effected by a 'contract, combination ... or conspiracy' between separate entities. It does not reach conduct that is 'wholly unilateral.'" *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768, 104

S.Ct. 2731, 81 L.Ed.2d 628 (1984). "[T]erms like 'conspiracy' or even 'agreement', are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement, but a court is not required to accept such terms as a sufficient basis for a complaint. The case law on this point is ample." *DM Research, Inc.,* 170 F.3d at 56 *citing Car Carriers,* 745 F.2d at 1106. "Absent an agreement between two or more independent business entities, there can be no violation of section 1. Neither a conclusory allegation of a conspiracy, nor an allegation of a unilateral business decision, will survive a motion to dismiss." *Int'l Television Productions Ltd., v. Twentieth Century–Fox Television Division of Twentieth Century–Fox Film Corp.,* 622 F.Supp. 1532, 1537 (S.D.N.Y. 1985).

■ In the present case, Plaintiff only makes bald and repetitive antitrust "conspiracy" assertions against Defendant Port of Ponce, without specific allegations regarding a written or oral agreement between the parties. Neither does Plaintiff provide a basis for inferring a tacit agreement to conspire by alleging conscious parallelism or other facts which could reasonably lead to an inference of collusion, pursuant to the doctrines developed in *Interstate Circuit v. United States,* 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939) and *In re Petroleum Products Antitrust Litigation,* 906 F.2d 432 (9th Cir.1990). Under these circumstances, no violation of Section 1 of the Sherman Act may be found.

■ Furthermore, the same logic discussed above with respect to Defendant PRCC applies to Plaintiff's claims against Defendant Port of Ponce based on monopolization and tying arrangements under Section 2 of the Sherman Act and Section

4 of the Clayton Act (or possibly Section 1 of the Sherman Act). Defendant Port of Ponce is simply not dedicated to the business of Commercial Maritime Agency, and could not, therefore, engage in the monopolization of said market or creating any tying arrangements with such products or services.

■ Disposing of the Commonwealth antitrust law claims against Defendant Port of Ponce proves even easier. The Commonwealth's antitrust statute specifically exempts state instrumentalities from application of the statute's provisions. The statute explicitly states that the terms "person" and "persons," as used in the antitrust laws, "shall not include public corporations or state instrumentalities." Law No. 77 of June 25, 1964 at Section 1, 10 P.R. Laws Ann. § 257. Since Plaintiff has failed to contest that Defendant Port of Ponce is either a public corporation or a state instrumentality under the antitrust statute, we find that said statute is inapplicable against this Defendant. Therefore, we find that all claims against Defendant Port of Ponce must also be **DISMISSED WITH PREJUDICE**.

### Claims Against AYACOL

Finally, we come to Plaintiff's claims against its competitor, AYACOL. First, we should note that our previous discussion regarding the Plaintiff's need to allege an agreement to restrain trade in order to survive a motion to dismiss its claim under Section 1 of the Sherman Act is equally applicable to the claims against Defendant AYACOL as it was to the claims against Defendant Port of Ponce. As we mentioned earlier, "[a]bsent an agreement between two or more independent business entities, there can be no violation of section 1. Neither a conclusory allegation of a conspiracy, nor an allegation of a unilateral business decision, will survive a motion to dismiss." *Int'l Television Productions*, 622 F.Supp. at 1537.

■ In the present case, Plaintiff only makes bald and repetitive antitrust "conspiracy" assertions against Defendant AYACOL, without specific allegations regarding a written or oral agreement between the parties. Neither does Plaintiff provide a basis for inferring a tacit agreement to conspire by alleging conscious parallelism or other facts which could reasonably lead to an inference of collusion, pursuant to the doctrines developed in *Interstate Circuit*, 306 U.S. 208, 59 S.Ct. 467 and *In re Petroleum Products Antitrust Litigation*, 906 F.2d 432. Under these circumstances, no violation of Section 1 of the Sherman Act may be found.

■ With respect to the allegations of the existence of a tying arrangement, in violation of Section 4 of the Clayton Act (or possibly Section 1 of the Sherman Act), we must note that the only product or service, relevant to the facts of this case, which Plaintiff avers is sold or offered by Defendant AYACOL is that of Commercial Maritime Agency. Since a tying arrangement requires the existence of two products or services, which are then tied by the producer of said products or services, the Court fails to see how AYACOL could possibly be liable for an illegal tying arrangement. The only possibility that comes to the Court's mind is that Plaintiff is trying to allege that AYACOL and the Port of Ponce are jointly tying each other's products and services, namely the service of Commercial Maritime Agency and the delivery of docking or mooring permits, or any other documentation required to moor or dock a commercial cargo ship in the facilities of the Port of Ponce. However, this argument fails because, where the state action exemption applies and the state's action is immune, an individual cannot be liable for conspiring with the gov-

ernment. *City of Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). Since we have already held that Defendant Port of Ponce is immune under the state action doctrine, Defendant AYACOL would also be immune from any charge of conspiracy with the Port of Ponce to violate the antitrust laws.

 Finally, we must address Plaintiff's claims of attempt to monopolize, and maintenance of a monopoly.[6] Plaintiff has proffered several allegations regarding Defendant AYACOL's control of the Commercial Maritime Agency market. Plaintiff has also averred that Defendant AYACOL has been engaging in a severely aggressive attempt to take over the remaining share of the market. Furthermore, and most importantly, Plaintiff's complaint raises serious points regarding Defendant's pricing strategy, and alleges that AYACOL is engaging in a campaign of predatory pricing. Were Plaintiff successful in proving these allegations at trial, a jury could very well find that Defendant AYACOL has obtained and/or is maintaining a monopoly through unfair trade practices, or at least is attempting to do so. Even though, Defendant is correct in stating that Plaintiff has not concretely and specifically alleged the precise definition of the relevant market, how much of it is currently controlled by Defendant AYACOL, how its current pricing schedule compares with its costs, and the probability Defendant has of recouping the losses incurred by such a strategy, we find that Plaintiff's allegations are sufficient to survive the lenient pleading standard of Fed.R.Civ.P. 8. Consequently, Defendant AYACOL's motion to dismiss Plaintiff's claims of attempt to monopolize, and acquisition and maintenance of a monopoly, is **DENIED**, at this time. Of course, Defendant AYACOL may wish to test the sufficiency of Plaintiff's evidence again after engaging in discovery *via* a motion for summary judgment.

## Conclusion

For all the foregoing reasons, Defendants' motions to dismiss are **GRANTED in part and DENIED in part**. All of Plaintiff's claims against Defendant Cementos de Mexico, S.A. a/k/a Cemex, and/or Cemex, S.A. de C.V. are **DISMISSED WITHOUT PREJUDICE**; all of Plaintiff's claims against Defendants Puerto Rico Cement Company, Inc., Port of Ponce, Municipality of Ponce, and Ramón Torres Morales and Juan Arruza Latimer, in both their official and personal capacities, are **DISMISSED WITH PREJUDICE**. Finally, all of the claims against Defendant Luis Ayala Colón Sucesores, Inc., except for the claims under Section 2 of the Sherman Act for attempt to monopolize, and acquisition and maintenance of a monopoly, are also **DISMISSED WITH PREJUDICE**.

Also before the Court are the parties' multiple motions regarding the initiation of discovery while the motions to dismiss discussed above were pending (Docket ## 35, 36, 37, 54, 58, 59 and 61).[7] All of these

---

6. Of course, Plaintiff's claims of conspiracy to monopolize against Defendant AYACOL must be DISMISSED WITH PREJUDICE since, having dismissed all monopoly claims against all other Defendants, there is no one left with whom Defendant AYACOL could have conspired to monopolize.

7. The Court wishes to comment on one detail regarding said motions. All Defendants, but Defendants AYACOL and PRTC in particular, should be aware that, even though they did succeed in having their claims dismissed (or most of them, anyway), their failure to engage in discovery was in direct contravention to this Court's Case Management Order, which explicitly states that "[t]he filing of dispositive

motions have now become MOOT. This Opinion and Order, therefore, **TERMINATES** all the following pending motions: Docket## 18, 19, 21, 23, 35, 37, 58, 59 and 61. Lastly, the remaining two parties are **ORDERED** to file their Joint Case Management Memorandum by October 18, 2003. The deadline for the conclusion of discovery and for the filing of any motions for summary judgment is hereby reset to January 15, 2004, and the deadline for filing the parties' Joint Proposed Pretrial Order is reset for February 15, 2004. Failure to comply with said deadlines may result in the imposition of sanctions which could include dismissal of this action or the entry of default.

**SO ORDERED.**

motions does not disrupt the pretrial procedures or suspend the deadlines set herein." Docket # 33 at 5. The only Defendants who had legitimate reasons to ignore the Court's Order and refuse to engage in discovery were Cemex, who was raising meritorious allegations regarding this Court's lack of personal jurisdiction over it, and the Government Defendants, who were raising the defense of immunity from suit. The other two Defendants' disregard of this Court's Order is, however, inexcusable.