SAN GERÓNIMO CARIBE PROJECT, INC., Plaintiff

v.

Anibal Acevedo VILA, et al., Defendants.

Civil No. 08–2217(DRD).

United States District Court, D. Puerto Rico.

Sept. 30, 2009.

---

John M. Garcia–Nokonechna, Orlando Fernandez, Garcia & Fernandez, San Juan, PR, for Plaintiff.

Jose J. Gueits–Ortiz, Wandymar Burgos–Vargas, Department of Justice of Puerto Rico, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are Defendants' *Motion to Dismiss Under Fed. R.Civ.P. 12(b)(6) and 12(b)(1)* (Docket No. 13), and *Plaintiff's Opposition to Defendants' Motion to Dismiss* (Docket No. 24). On April 22, 2009, the Court referred the pending motions to Magistrate Judge Bruce McGiverin (Docket No. 38), for a report and recommendation. Consequently, on August 3, 2009 Magistrate Judge McGiverin entered a *Report and Recommendation* (Docket No. 43), recommending the Court to grant Defendants' *Motion to Dismiss.* Hence, on August 10, 2009, Plaintiff filed its *Objections to Magistrate Judge's Report and Recommendations* (Docket No. 44).

After carefully reviewing the pending matter, the Court hereby adopts *in toto* the Magistrate's *Report and Recommendation* (Docket No. 43), although the Court adds that Plaintiff's claims are also subject to dismissal under the doctrine of qualified immunity. Consequently, for the reasons stated below, Defendants' *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and*

*12(b)(1)* (Docket No. 13) is hereby **GRANTED.**

## I. STANDARD OF REVIEW

### A.

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*(Emphasis ours ).*

■ If no objections are filed against a Magistrate Judge's Report and Recommendation, the Court, in order to accept the unopposed R & R, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir., 1996) (en banc) (extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge);

*Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir., 1982) (en banc) (appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R., 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding FED.R.CIV.P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa., 1990) ("when no objections are filed, the district court need only review the record for plain error").

■ "Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985)(*emphasis ours* ). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir., 1992). *See also Sands v. Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was

not entitled to a de novo review of an argument never raised"). *See also United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

Since Plaintiff timely filed objections to the Magistrate's report and recommendation, the Court shall review *de novo*, the portions to which the Plaintiff has expressed objections. *See Borden*, 836 F.2d at 6.

## B. MOTION TO DISMISS STANDARD 12(b)(6)

■■■ Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996); *see also Berríos v. Bristol Myers Squibb Puerto Rico, Inc.*, 51 F.Supp.2d 61 (D.P.R. 1999). A complaint, in order to survive a motion to dismiss, must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *See Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988)).

■■■ In other words, in order for a Plaintiff to sustain recovery under some actionable theory, the Plaintiff must plead, pursuant to the

Federal Rule of Civil Procedure 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

. . . .

While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. See 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does

not authorize a pleader's "bare averment that he wants relief and is entitled to it").

*Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 545–555 and FN. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Furthermore, in *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) the United States Supreme Court, held that pursuant to *Twombly*

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*(Quoting Twombly,* 550 U.S. 544, 556–557, 127 S.Ct. 1955, 167 L.Ed.2d 929) *(internal citations omitted ).*

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *See Aulson v. Blanchard,* 83 F.3d at 3. The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. *See Litton Indus., Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim...." *Id.; see also Rogan v. Menino,* 175 F.3d 75 (1st Cir.1999).

A district court's dismissal of a claim under Rule 12(b)(6) is reviewed de novo by the appeals court; such court "accept[s] as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the plaintiff's favor." *See Calderon–Ortiz v. LaBoy Alvarado,* 300 F.3d 60, 62–63 (1st Cir.2002) *(emphasis ours );* see also *SEC v.SG Ltd.,* 265 F.3d 42, 46 (1st Cir.2001). Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory," any order of dismissal shall be set aside. *See Calderon Ortiz,* 300 F.3d at 63(*quoting Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 and *Aulson,* 83 F.3d at 3).

## C. MOTION TO DISMISS STANDARD 12(b)(1)

A motion to dismiss filed under Rule 12(b)(1) is subject to a similar threshold standard as in a motion to dismiss under Rule 12(b)(6). *See Murphy v. U.S,* 45 F.3d 520, 522 (1st Cir.1995); *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994); *Torres–Maysonet v. Drillex, S.E.,* 229 F.Supp.2d 105, 107 (D.P.R.2002). When deciding a Motion to Dismiss, the Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. *See Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998). To resolve factual disputes bearing upon the existence of jurisdiction, a court may review the evidence including affidavits and depositions. Once a defendant files a motion contesting the Court's subject matter jurisdiction, pursuant to Federal Rule 12(b)(1), it is the plaintiff's burden to establish that the Court has jurisdiction. *See Knoll v. City of Chesterfield, Missouri,* 71 F.Supp.2d 959, 961 (E.D.Mo.1999); *see also FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (The party who

invokes federal jurisdiction is the one that bears the burden of establishing the standing elements.); *United Parcel Service, Inc. v. Flores–Galarza,* 385 F.3d 9, 15 (1st Cir. 2004).

 Federal Courts are courts of limited jurisdiction. This Court has the responsibility "to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.,* 251 F.3d 1 (1st Cir.2001). The courts must "rigorously enforce the jurisdictional limits [standards] that Congress chooses ..." *del Rosario Ortega v. Star Kist Foods,* 213 F.Supp.2d 84, 88 (D.P.R. 2002) (*citing Coventry Sewage Associates v. Dworkin Realty Co.,* 71 F.3d 1, 3 (1st Cir.1995)). Therefore a party that seeks the jurisdiction of the Federal Courts, has the burden of demonstrating its existence. *See Flores–Galarza,* 385 F.3d at 15 ("... UPS [as has Plaintiff in the instant case] has presented no evidence to the contrary. As the party invoking federal jurisdiction, UPS bore the burden of establishing its existence once challenged ..."); *see also Mangual v. Rotger–Sabat,* 317 F.3d 45, 56 (1st Cir.2003).

## II. ANALYSIS

### A. FEDERAL CLAIMS

After reviewing all of the pending issues and reviewing *de novo* the portions of the Magistrate Judge's Report and Recommendation to which the plaintiff, San Gerónimo Caribe Project, Inc. ("SGCP"), expressed objections[1], the Court agrees *in toto,* with the findings and recommendations made by Magistrate Judge Bruce McGiverin. Furthermore, the Court finds that after taking into consideration Plaintiff's objections, the Court reaches the same conclusions as those reached by

Magistrate Judge McGiverin. Consequently, the Court hereby adopts and incorporates the Magistrate Judge's *Report and Recommendation* (Docket No. 43) to the instant *Opinion and Order.* The Court however adds that the case is also amenable to dismissal under the qualified immunity affirmative defense to a § 1983 civil rights action. The Court briefly explains.

In the instant case, Plaintiff contends that Defendants' actions of holding the permits in abeyance and hence, suspending the construction of the Paseo Caribe Project in San Juan, Puerto Rico, caused Plaintiff to incur over $38 million in losses. Pursuant to the allegations in the Complaint, Defendants actions commenced on December 11, 2007, when co-defendant, Roberto J. Sanchez Ramos, the Secretary of Justice, at the request of the Senate, conducted a thorough research and analysis and issued an opinion wherein it was found that a section of the Paseo Caribe land was originally in the public domain and hence should not have been sold without prior legislative approval (thereby reversing a prior 2002 Opinion of the then Secretary of Justice). *See* Docket Nos. 26–2–26–5. The Secretary's Opinion among other matters, made recommendations to governmental agencies to reevaluate all permits related to the Paseo Caribe Project, albeit "safeguarding any procedural and substantive law or rights the effected parties may have." Docket No. 26–5, pg. 163 FN. 18. Plaintiff further contends that on December 12, 2007, after the Secretary's Opinion was issued, co-defendant, Anibal Acevedo Vila, the then Governor of Puerto Rico, after meeting with the Cabinet members, the Secretary of Justice, the Secretary of Natural Re-

---

1. The Court notes that since Plaintiff failed to object to the Magistrate's recommendations pertaining to its claim under the Equal Pro-

tection Clause, the Court finding *no plain* error adopts *in toto* the Magistrate's recommendation as to said claim.

sources, and others, publicly stated to all administrative agencies involved, to suspend all permits for the Paseo Caribe Project and to freeze all construction for an initial period of sixty (60) days. Moreover, Plaintiff avers that two days later on December 14, 2007, co-defendant Luis A. Velez–Roche, head of the Regulations and Permits Administration ("ARPE"), issued an order to show cause to Plaintiff, to demonstrate why the permits previously issued by ARPE should not be held in abeyance and that the Paseo Caribe construction be stayed for sixty (60) days. A hearing was scheduled and held on December 20, 2007. On December 27, 2007, Velez–Roche issued ARPE's Resolution and Order, holding that Plaintiff's permits were to be held in abeyance, and hence the ongoing construction in the Paseo Caribe project was to be halted for a sixty (60) day period, with the proviso that the term could be extended if required in the public's interest.

Part of the project was in the last stages nearing completion when Plaintiff's permits were held in abeyance, thereby freezing the construction. However, the Paseo Caribe Project became, publicly controversial. As stated in Plaintiff's Complaint, in the second half of 2007, the project was plagued by negative publicity as a very small but extremely vocal segment of the community openly and vehemently protested the development. Plaintiff further stated that as a result of their negative visibility, the protestors and their supporters became a significant political constituency, capable not only of demanding attention from the press, but also of exerting political pressure on governmental officials.

■ After carefully reviewing the instant case's record, as well as the applicable case law, *see e.g. SFW Arecibo, Ltd. v. Rodriguez*, 415 F.3d 135 (1st Cir.2005),

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32 (1st Cir.1992), and *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28 (1st Cir.1991), *cert dismissed*, 503 U.S. 257, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992), the Court finds that Plaintiff's procedural and substantive due process claims fail as a matter of law. Furthermore, since the dismissal of the equal protection claim was not challenged, the Court, finding *no plain* error in the Magistrate Judge's conclusions, hereby adopts them *in toto*.

■ It has been clearly established that in order for a Plaintiff to adequately state a procedural due process claim under § 1983, the Plaintiff has to allege "that it has a property interest as defined by state law and, [ ] that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." *SFW Arecibo, Ltd.*, 415 F.3d at 139 (*quoting PFZ Properties, Inc.*, 928 F.2d at 30) (*internal quotations omitted*). Plaintiff contends that following a "sham hearing," ARPE summarily suspended its permits for an initial sixty (60) days, which caused a halt in the construction. In other words, Plaintiff avers that it was deprived of its property interest without a meaningful hearing. "That assertion is misguided. If [Plaintiff has] a property interest in the land use permit ([the Court] assume[s] *arguendo* that they do), the post-deprivation process available to them under Puerto Rico law is a constitutionally adequate protection for that interest." *SFW Arecibo*, 415 F.3d at 139. As in *SFW Arecibo*, Plaintiff has not satisfactorily challenged the adequacy of the permitting procedures established by Puerto Rico Law. *See Nestor Colon Medina & Sucesores, Inc.*, 964 F.2d at 40 ("Appellants do not challenge the facial adequacy of the PRPB permitting procedures themselves; rather, they claim that PRPB offi-

cials, acting under the malign influence of the governor and other politicians, violated and abused those procedures. In such circumstances, Puerto Rico cannot be faulted for failing to have provided other pre-deprivation process. Puerto Rico did provide post-deprivation process. Thus, Puerto Rico law allowed appellants to ask for reconsideration and it afforded them judicial review in the courts of the Commonwealth where they could challenge the alleged administrative abuses.") (*Internal citations omitted*).

Instead, Plaintiff alleges that he was deprived of his property interests by the Defendants without due process of law, since Plaintiff was not afforded adequate administrative hearings by ARPE nor by any other agency or state official. Plaintiff further contends that none of the Defendants had any authority or jurisdiction to hold in abeyance its permits and halt the construction. In *PFZ Properties,* the First Circuit Court of Appeals rejected a similar due process claim holding that:

> [w]hen a deprivation of property results from conduct of state officials violative of state law, the Supreme Court has held that failure to provide pre-deprivation process does not violate the Due Process Clause. *See Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1980) [1981]. Indeed, it makes little sense to argue that ARPE had to afford the plaintiff a hearing before it illegally departed from its own procedures by [holding in abeyance Plaintiff's land use permits and halting the construction]. The state is not required to anticipate such violations of its own constitutionally adequate procedures. To hold otherwise would convert every departure from established administrative procedures into a violation of the Fourteenth Amendment, cognizable under § 1983. *See Creative Environments v. Estabrook,* 680 F.2d 822, 832 n.

9 (stating that "where a state has provided reasonable remedies to rectify a legal error by a local administrative body ... due process has been provided"), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

> **As, therefore, a pre-deprivation hearing was not required to meet the demands of the Due Process Clause, the only question is whether the post-deprivation process available to [Plaintiff] was adequate.**

928 F.2d at 31 (*emphasis ours*).

As in *PFZ Properties,* the Plaintiff in the instant case had under Puerto Rico law, the right to petition for reconsideration by ARPE and/or for review in the local Court of First Instance and local Appeals Court. Nevertheless, unlike the Plaintiff in *PFZ Properties,* all of SGCP's post-deprivation procedures were held in its favor. Pursuant to the instant case's Complaint, SGCP filed a Complaint for Declaratory Judgment in the Court of First Instance on December 19, 2007, prior to ARPE's Resolution and Order, requesting the Court to enter judgment declaring that the parcels of land gained from the sea on which part of Paseo Caribe was being constructed were not of the public domain but instead lawfully owned by SGCP. Consequently, on February 8, 2008, the Court of First Instance entered judgment holding that SGCP's had valid title over all of the property underlying the Paseo Caribe Project. Furthermore, Plaintiff was able to timely appeal ARPE's Resolution and Order in the local Appeals Court. On February 6, 2008, the Appeals Court issued an order holding that ARPE had violated SGCP's due process rights under Puerto Rico law, by failing to provide a timely post-deprivation hearing, as required by the summary procedure provided by ARPE. Nevertheless, since the

Court Appeals further held that ARPE had the authority under Puerto Rico law to hold in abeyance the permits and halt the construction, the Court did not lift ARPE's temporary sixty (60) day stay. Consequently, on February 15, 2008, Plaintiff filed a petition for certiorari in the Puerto Rico Supreme Court, and on February 28, 2008 the Supreme Court issued the writ of certiorari. In issuing the writ, the Supreme Court held although Plaintiff's petition for certiorari was under the Court's consideration, ARPE's Resolution and Order of February 28, 2008 staying Plaintiff's permits and construction was left without effect pursuant to the judgment provided by the Court of First Instance on February 6, 2008. *See* Docket No. 30–2. Then on July 31, 2008, the Supreme Court issued its opinion in the certiorari matter, in Plaintiff's favor. *See* Docket No. 29–5.[2]

Therefore, the Court finds that since Plaintiff "had the opportunity to present its allegations of administrative error and misconduct before the relevant administrative and judicial bodies of the Commonwealth of Puerto Rico, ... the combination of administrative and judicial remedies provided by Puerto Rico law is sufficient to meet the requirements of due process." *PFZ Properties, Inc.*, 928 F.2d at 31. Consequently, the Court finds that Plaintiff's procedural due process rights were not violated.

 In regards to Plaintiff's substantive due process claim under § 1983, the Court finds that the aforementioned federal case law clearly applies and therefore said substantive due process claim is also foreclosed. In *SFW Arecibo*, the First

Circuit Court, quoting *PFZ Properties* held the following:

> In *PFZ Properties*, we explained the standard for establishing a substantive due process violation in the land use permitting context:
>
>> This Court has repeatedly held ... that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state law officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.
>
> *Id.* at 31–32 (internal citations and quotation marks omitted) (brackets in original). Although "[w]e have left the door slightly ajar for federal relief in truly horrendous situations, ... the threshold for establishing the requisite 'abuse of government power' is a high one indeed." *Colon*, 964 F.2d at 45.

415 F.3d at 141 (*emphasis on original* ).

The Court finds that Plaintiff's allegations regarding ARPE's order to hold in abeyance SGCP's permits and halting the

---

**2.** The Court deems necessary to note that one of the Puerto Rico Supreme Court Judges, Honorable Fiol Matta, issued a dissenting and concurring opinion, holding among other matters that she did not concur with the majority's analysis regarding the lands gained

from the sea adjacent to the Coast Guard Parcel, since the historical analysis had convinced her that said lands are of public domain and therefore not susceptible of judicial traffic. *See* Docket No. 29–3–29–4.

construction for sixty (60) days fail to establish a substantive due process violation under the aforementioned standard. "In its strongest form, [Plaintiff's] claim is essentially that [ARPE] made an erroneous decision in violation of state law. This claim is indistinguishable from the [claim] [the Circuit Court] rejected in *PFZ Properties.*" *SFW Arecibo,* 415 F.3d at 141 (*citing* and *quoting PFZ Properties, Inc.,* 928 F.2d at 32, wherein the Circuit Court held that "PFZ's allegations that ARPE officials failed to comply with agency regulations or practices in the review and approval process for the construction drawings are not sufficient to support a substantive due process claim")(*emphasis on original*). Consequently, the Court finds that Plaintiff has failed to state a substantive due process claim upon which relief can be granted. *See SFW Arecibo,* 415 F.3d at 141.

■ Moreover, although the Magistrate Judge's report and recommendation was geared mainly to address Defendants' theory of Plaintiff's failure to state a claim under § 1983, hence there being no need to analyze Defendants qualified immunity defense, the Court has determined to briefly explain why Defendants would also be entitled to qualified immunity. Consequently, Plaintiff would not prevail in any of its damages claims which constitute the only requested relief.

■ Qualified immunity shields public officials performing discretionary functions from civil damages, so long as their conduct does not violate clearly established statutory or constitutional rights, of which an objectively prudent person would be aware. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir.1998). Essentially, "[q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated] are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (*internal citations omitted*); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In *Saucier,* 533 U.S. 194, 121 S.Ct. 2151, [the United States Supreme Court] mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Ibid.* Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson v. Callahan,* —— U.S. ——, 129 S.Ct. 808, 815–816, 172 L.Ed.2d 565 (2009)(*citing Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Nevertheless, the Supreme Court clarified in *Pearson v. Callahan* that since the aforementioned two-step procedure mandated by *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), "is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of [the] decision making [that] will best facilitate the fair and efficient disposition of each case." *Id.,* at 821. The Supreme Court further held that

Justifying the decision to grant qualified immunity to the defendant without first resolving, under *Saucier's* first prong, whether the defendant's conduct violated the Constitution, these courts have observed that *Saucier's* "underlying principle" of encouraging federal courts to decide unclear legal questions in order to clarify the law for the future "is not meaningfully advanced ... when the definition of constitutional rights depends on a federal court's uncertain assumptions about state law."

*Id.,* at 819 (*quoting Egolf v. Witmer,* 526 F.3d 104, 109–111 (3rd Cir.2008) and *citing Tremblay v. McClellan,* 350 F.3d 195, 200 (1st Cir.2003), *Ehrlich v. Glastonbury,* 348 F.3d 48, 57–60 (2nd Cir.2003)).

As aforementioned, when determining qualified immunity, the Court may choose to first assess whether the constitutional right asserted by the Plaintiff was clearly established at the time of the alleged violation. Consequently, the Court finds that considering the facts of this case, it would be more efficient to determine first whether or not Plaintiff's averred property rights were clearly established at the time of the alleged violation.

In the instant case Plaintiff alleges that Defendants deprived it of its property without due process as provided by the Constitution of the United States. The Court, after reviewing the instant case's record, has determined that Plaintiff's "property interests" over the permits and the land were not "clearly established" at the time of Defendants' alleged violative conduct. The Court finds that the opinion issued by co-defendant, Roberto Sanchez Ramos, the Secretary of Justice [3], raised complex legal issues and reversed prior opinions by finding that since part of the Paseo Caribe land was in fact originally in the public domain, the same should not have been sold without legislative approval, which in turn resulted in the questionability of the permits that had been issued by several Agencies with regards to the Paseo Caribe Project. Furthermore, the issuance of the Secretary's Opinion, reversed a 2002 Opinion and a 1970 Opinion, which held that the lands within the boundaries of the Paseo Caribe Project were not part of the public domain and therefore could be sold without legislative action. In other words, Plaintiff's property interests over the land and hence over the permits, were being highly questioned, although the ultimate determination was for the Supreme Court of Puerto Rico Court to decide.[4] Consequently, the Court understands that Plaintiff's property interests were not "clearly established" at the time of Defendants alleged violation. Moreover, the issue pertaining to the lands was ultimately determined by the Puerto Rico Supreme Court on July 31, 2008. Hence, if Plaintiff's property interests were not clearly established until July 31, 2008, "a reasonable official would [not have] underst[ood] that what he [was] doing violate[d] that right.'" *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219,1227,

---

**3.** The Court notes that the Secretary of Justice has the authority to issue and publish opinions, thereby having the opportunity to influence the public policy. *See* 3 L.P.R.A. Sec 292c; *see also* Docket No. 26–6, pgs. 56–58.

**4.** The Court deems necessary to note that pursuant to Puerto Rico law, the Registrar of Property "does not grant or take away rights, and [its] function is not to declare the existence or nonexistence of doubtful rights." *U.S.I. Properties, Inc. v. Registrador,* 124 D.P.R. 448 (1989), 1989 P.R.-Eng. 607,277. Reliability on the contents of the public registrar does not therefore solve the matter for the public official. Consequently, the opinion of the Secretary of Justice created reasonable doubts on public officials, which had to be determined by the Courts of Puerto Rico.

137 L.Ed.2d 432 (1997); *see also Pearson,* 129 S.Ct. at 815 ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' ") (*quoting Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)).

What is more, in most of the First Circuit Court cases wherein the property interest over a land use permit issued by a Puerto Rican Agency under Puerto Rico law, has been an issue, the First Circuit has declined to decide or simply has not found the need to decide whether or not said interest constitutes a property interest under Puerto Rico law. The Circuit Court has simply resorted to assume *arguendo* that the party has a property interest over the permits, in order to determine whether there is a cognizable procedural due process claim under § 1983. *See SFW Arecibo,* 415 F.3d at 139; *see also PFZ Properties, Inc.,* 928 F.2d at 31; *Nestor Colon Medina & Sucesores, Inc.,* 964 F.2d at 40 (*citing PFZ Properties, Inc.,* 928 F.2d at 31). Consequently, and more so under the facts of this case, the Court is persuaded to conclude that Plaintiff's property interests over the land and the permits were not "clearly established" at the time of the alleged violations and what is more, said permit interest might not even be considered as a property interest under Puerto Rico law. Therefore, the Court finds that Defendants are entitled to qualified immunity, and hence are personally exempt from a money damages award.

## B. STATE LAW CLAIMS

 In essence, Federal Courts by their very nature are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The presumption is that a federal court lacks jurisdiction. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673. Consequently, the burden is on the Plaintiff, who claims jurisdiction, to affirmatively allege and prove jurisdiction. *Id.* To bring a civil action within the court's subject matter jurisdiction, a Plaintiff must allege that its action "requires the resolution of a substantial question of federal law," *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); or that its action involves diversity jurisdiction. *See* 28 U.S.C. §§ 1331 & 1332.

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Consequently, since Plaintiff's federal claims have been **DISMISSED**, the Court hereby declines to exercise the supplemental jurisdiction over Plaintiff's state law

claims. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); *see also Rodriguez Cirilo v. Garcia*, 908 F.Supp. 85, 92 (D.P.R.1995).

## III. CONCLUSION

For the reasons stated above and after reviewing *de novo* the portions of the Magistrate Judge's *Report and Recommendation* to which the plaintiff, San Gerónimo Caribe Project, Inc., expressed objections, the Court hereby adopts and incorporates the Magistrate Judge's *Report and Recommendation* (Docket No. 43) to the instant *Opinion and Order*.[5] Therefore, Defendants' *Motion to Dismiss Under Fed. R.Civ.P. 12(b)(6) and 12(b)(1)* (Docket No. 13), is hereby **GRANTED.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

**5.** The Court need not go further for it refuses to write at length to no other end than to hear its own words resonate as to the instances alleged as errors by plaintiff.

Where, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate.

*Vega–Morales v. Commissioner of Social Security*, 380 F.Supp.2d 54, 60 (2005)(*quoting Lawton v. State Mut. Life Assu. Co. of Am.*, 101 F.3d 218, 220 (1st Cir.1996); and *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993)).